**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| ACACIA OPERATING COMPANY, LLC | § | Case No. 24-70194-SMR |
|     Debtor. | § | |
| | § | |

**EMERGENCY MOTION FOR LEAVE TO FILE RESPONSE TO
THE STATE OF NEW MEXICO'S MOTION TO DETERMINE
INAPPLICABILITY OF THE AUTOMATIC STAY PURSUANT
TO 11 U.S.C. § 362(B)(4) TO THE STATE'S ACTION AGAINST DEBTOR**

Marquis Reed Gilmore Jr, Gilmore Oil & Gas, LP, Bluebird Energy Corporation, Cibolo Energy (the "Gilmore Parties") files this Motion for Leave ("Motion"), and in support thereof states as follows:

## I.  INTRODUCTION

1.      The Gilmore Parties, the Debtor, and the State of New Mexico are parties to litigation pending in the First Judicial District Court, County of Santa Fe, New Mexico styled *Raul Torrez, Attorney General, et al. vs. Acacia Operating Company, LLC, et al.*; Case No. D-101-CV-2025-03283 ("State Court Litigation").  The State of New Mexico filed its Motion to Determine (defined herein) on or about December 22, 2025.  The Gilmore Parties seek leave to file a response to the Motion to Determine which is attached hereto as **Exhibit A** (the "Objection"). The Gilmore Parties engaged the undersigned bankruptcy counsel after the expiration of the deadline to respond to the Motion to Determine and request the opportunity to file a response thereto.

## II.  BACKGROUND

2.      On December 27, 2024 ("Petition Date"), the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code.

3.      On December 22, 2025, the State of New Mexico filed its Motion to Determine Inapplicability of the Automatic Stay Pursuant to 11 U.S.C. § 362(b)(4) to the State's Action Against Debtor ("Motion to Determine") [Docket No. 58].

4.      On January 9, 2026, the undersigned was retained as counsel for the Gilmore Parties in the State Court Lawsuit and began examining claims with respect thereto.

5.      On February 19, 2026, the undersigned was retained as counsel for the Gilmore Parties in this bankruptcy proceeding.

6.      Because the response deadline has lapsed, the Gilmore Parties seek leave of Court to file the attached Objection, so that they may have an opportunity to respond and be heard.

### III.  ARGUMENT & AUTHORITIES

7.      Bankruptcy Rule 9006(b)(1) provides that the Court may enlarge the time for taking action where the failure to act was the result of "excusable neglect." Fed. R. Bankr. P. 9006(b)(1). In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), the Supreme Court established a four-factor test for determining whether neglect is excusable: (i) the danger of prejudice to the debtor or other parties; (ii) the length of the delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the movant acted in good faith. *Id.* at 395. Each factor weighs in favor of granting leave here.

8.      Danger of Prejudice. No party will be prejudiced by allowing the Gilmore Parties to file their Objection. The Motion to Determine has not yet been heard by the Court and the State has not relied on the absence of an objection from the Gilmore Parties in any way that would be disrupted by the filing of the Objection. Moreover, the Chapter 7 Trustee filed his own *Limited Objection and Response* [Docket No. 62] on January 12, 2026, demonstrating that the issues raised in the Motion to Determine remain actively contested and unresolved.

9.      <u>Length of Delay</u>. The delay in filing the Objection is minimal. The Gilmore Parties retained the undersigned as counsel in the state court proceeding on January 9, 2026. After reviewing the state-court pleadings, and state-court abeyance, the Gilmore Parties retained Jackson Walker to appear in the bankruptcy. Therefore, the Gilmore Parties retained Jackson Walker as bankruptcy counsel on February 19, 2026, and are filing this Motion promptly thereafter. The Gilmore Parties have acted with diligence since retaining counsel, and the brief delay will not impact the Court's ability to adjudicate the Motion to Determine on the merits.

10.     <u>Reason for Delay</u>. The reason for the delay was entirely outside the Gilmore Parties' reasonable control. The Gilmore Parties did not have bankruptcy counsel during the objection period. Marquis Reed Gilmore Jr. is an individual who, along with the related Gilmore entities, was named as a defendant in the State's proposed state-court complaint. The Gilmore Parties did not retain bankruptcy counsel until February 19, 2026, at which point the objection deadline had already passed. The delay is therefore attributable to the absence of counsel—not to any strategic decision, dilatory motive, or disregard for the Court's procedures.

11.     <u>Good Faith</u>. The Gilmore Parties have acted in complete good faith. Upon retaining counsel, they promptly prepared both the attached Objection and this Motion for Leave. There is no indication of bad faith, strategic gamesmanship, or an attempt to delay the proceedings.

12.     This Court has broad discretion to permit late filings in the interest of justice and to ensure that all parties in interest have a meaningful opportunity to be heard. *See* 11 U.S.C. § 105(a) (authorizing the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title"). Permitting the Gilmore Parties to file their

Objection will promote the fair and efficient resolution of the Motion to Determine, ensure that all affected parties have been heard, and assist the Court in reaching a fully informed decision.

The Gilmore Parties request that this Court grant the relief requested herein, and award the Gilmore Parties such other and further relief, at law or in equity, as the Court may deem just and proper.

Dated: February 20, 2026

/s/ *Beau Butler*

**JACKSON WALKER L.L.P.**
Jennifer F. Wertz (TX Bar No. 24072822)
Beau H. Butler (TX Bar No. 24132535)
100 Congress Avenue, Suite 1100
Austin, TX 78701
Telephone: (512) 236-2000
Email: jwertz@jw.com
Email: bbutler@jw.com

**JACKSON WALKER LLP**
Robert L. Soza, Jr. (TX Bar No. 18869300)
Reagan M. Marble (TX Bar No. 24087971)
Brandon Durrett (TX Bar No. 24061059)
Robert M. Biedrzycki (TX Bar No. 24111174)
1900 Broadway, Suite 1200
San Antonio, TX 78215
Telephone: (210) 978-7000
Email: rsoza@jw.com
Email: rmarble@jw.com
Email: bdurrett@jw.com
Email: bbiedrzycki@jw.com

***Counsel to Marquis Reed Gilmore Jr, Gilmore Oil & Gas, LP, Bluebird Energy Corporation, Cibolo Energy***

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 20th day of February 2026 a true and correct copy of the foregoing document was served the Court's CM/ECF electronic notification system upon the following:

<u>Debtor</u>
Brandon John Tittle
Tittle Law Firm, PLLC
13155 Noel Drive, Suite 900
Dallas, TX 75240
btittle@tittlelawgroup.com

<u>State of New Mexico and the Oil Conversation Division</u>
William G., Grantham
Esther C. Jamison
Assistant Attorney Generals
Environmental Protection Division
408 Galisteo Street
Santa Fe, NM 87501
wgrantham@nmdoj.gov
ejamison@nmdoj.gov

<u>Chapter 7 Trustee</u>
Herbert C. Shelton, II
Hayward PLLC
7600 Burnet Rd., Suite 530
Austin, TX 78757
cshelton@haywardfirm.com

<u>New Mexico Oil Conversation Division</u>
Jessee K. Tremaine
Michael Hall
Assistant General Counsel
Oil Conservation Division
Energy, Minerals and Natural Resources Department
1220 South S. Francis Dr.
Santa Fe, NM 87505
jessek.tremaine@emnrd.nm.gov

<u>Midland Central Appraisal District</u>
Julie Ann Parsons
McCreary Veselka Bragg & Allen, P.C.
PO Box 1269
Round Rock, TX 78680
jparsons@mcbalaw.com

<u>Midland County</u>
Perdue, Brandon, Fielder, Collins & Mott, L.L.P
PO Box 817
Lubbock, TX 79408
lmbkr@pbfcm.com

<u>New Mexico State Land Office</u>
Lynn Hamilton Butler
Husch Blackwell
111 Congress Avenue, Suite 1400
Austin, TX 78701
lynn.butler@huschblackwell.com

/s/ *Beau Butler*
Beau H. Butler

19291365v.1 139990/00003

## Exhibit A

**Objection**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| ACACIA OPERATING COMPANY, LLC | § | Case No. 24-70194-SMR |
| Debtor. | § | |
| | § | |

**OBJECTION TO THE STATE OF NEW MEXICO'S MOTION TO DETERMINE INAPPLICABILITY OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(B)(4) TO THE STATE'S ACTION AGAINST DEBTOR**

Marquis Reed Gilmore Jr, Gilmore Oil & Gas, LP, Bluebird Energy Corporation, Cibolo Energy (the "Gilmore Parties") files this Objection ("Objection") to the State of New Mexico (the "State")*Motion to Determine Inapplicability of the Automatic Stay Pursuant to 11 U.S.C. § 362(b)(4)* ("Motion to Determine") [Docket No. 58], and in support thereof states as follows:

## I.  INTRODUCTION

1.      The Gilmore Parties submit that the Motion to Determine should be denied. The State's proposed litigation is not wholly exempt from the automatic stay under the police and regulatory powers exception because a substantial portion of the State's claims are: (i) pecuniary in nature, (ii) overlap with causes of action belonging exclusively to the Debtor's bankruptcy estate, and (iii) would interfere with the orderly administration of this Chapter 7 case.

2.      Moreover, the State had notice of, and an opportunity to participate in, the predecessor Remnant bankruptcy proceedings for years, yet chose not to assert the claims it now seeks to bring in state court. This Court—not the New Mexico state courts—is the proper forum for the resolution of these disputes.

## II.  BACKGROUND

3.      On December 27, 2024 ("Petition Date"), the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code.

4.      On December 22, 2025, the State of New Mexico filed its Motion to Determine.

5.      On December 23, 2025, the State filed a lawsuit in the First Judicial District Court, County of Santa Fe, New Mexico styled *Raul Torrez, Attorney General, et al. vs. Acacia Operating Company, LLC, et al*.; Case No. D-101-CV-2025-03283 against, among others, the Gilmore Parties and the Debtor ("State Court Litigation").

6.      On January 12, 2026, Ron Satija, in his capacity as Chapter 7 trustee (the "Trustee"), filed his *Limited Objection and Response* to the Motion to Determine [Docket No. 62] (the "Trustee's Objection").

**A.      The Remnant Bankruptcy**

7.      Prior to the Petition Date, on July 16, 2019, the Debtor's predecessor-in-interest, Remnant Oil Company, LLC, and Remnant Oil Operating, LLC (collectively, "Remnant"), filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Court, Case No. 19-70106-SMR (the "Remnant Bankruptcy").

8.      On April 14, 2020, the Remnant Bankruptcy was converted to a case under Chapter 7.

9.      The State of New Mexico had notice of the Remnant Bankruptcy. The New Mexico Attorney General (then Hector Balderas) was listed on Remnant's schedules as holding an unliquidated, undetermined priority claim described as a "governmental claim." The Remnant Debtors also scheduled amounts owed to the "State of New Mexico Oil Conservation District" for "various pending environmental actions," and the Remnant Statement of Financial Affairs disclosed a pending case with the State of New Mexico, Energy, Minerals, and Natural Resources Department, arising out of "inactive well and financial assurance violations."

10.     Despite receiving notice and having full knowledge of the Remnant Bankruptcy proceedings—including the sale of substantially all of Remnant's assets, the claims bar date, and the disposition of claims—the State did not file a proof of claim, did not object to the sale of Remnant's assets to Acacia, and did not seek to assert the fraudulent transfer, fraud, or other claims it now brings in the State Court Litigation.

11.     On June 30, 2020, the bankruptcy court approved the sale of substantially all of Remnant's assets to Acacia Resources, LLC, for $402,000 in cash plus the assumption of liens valued at approximately $5,545,636.33 [Docket No. 452] (the "Remnant Sale Order"). The Remnant Sale Order expressly preserved the State's regulatory claims and environmental obligations, providing that "[n]othing in this Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability of a governmental unit.

12.     On February 3, 2025, the Remnant bankruptcy case was closed.

13.     On June 11, 2025, the United States Trustee filed a motion to reopen the Remnant case for the limited purpose of pursuing recovery of $49,092.48 owed to the estate by Enterprise Fleet Management. The Court granted the motion, and the case was reopened on July 22, 2025.

## B.     The Acacia Bankruptcy

14.     The Debtor's current proceeding was filed approximately two weeks after Conoco Phillips filed a lawsuit against Acacia in Lea County, New Mexico, seeking to enforce obligations to plug six inactive oil and gas wells.

15.     The Chapter 7 Trustee has communicated to the State that he "does not oppose the filing of this motion or the filing of the state-court complaint." However, the State has

acknowledged that it and the Trustee "are in discussions as to whether any of the State's causes of action overlap with causes of action that the Trustee could also bring."

### C.      The State Court Litigation

16.      The State's proposed complaint, attached as Exhibit A to the Motion to Determine, seeks sweeping relief against the Debtor, Acacia Resources, Remnant, numerous corporate entities, and three individual defendants—Everett Willard Gray II, Marquis Reed Gilmore Jr., and Robert K. Stitzel—across twelve causes of action.  The complaint asserts claims for: (i) violations of the New Mexico Oil and Gas Act (Count I); (ii) actual and constructive fraudulent transfer under the Uniform Voidable Transactions Act ("UVTA") (Counts II and III); (iii) violations of the Fraud Against Taxpayers Act ("FATA") (Counts IV and V); (iv) unjust enrichment (Count VI); (v) civil conspiracy (Counts VII and VIII); and (vi) piercing the corporate veil (Counts IX through XII).

17.      Among other relief, the State seeks a declaration that the transfer of 87 gas wells from Acacia to Solis Partners is "voidable or fraudulent," and the return of "any positive-value assets" to Acacia's estate. The State further seeks a money judgment against the Debtor, reimbursement from the Debtor for plugging and remediation costs, and civil penalties against the Debtor.

### III.  OBJECTION

18.      The Trustee's non-opposition to the Motion appears to reflect a limited, pragmatic determination that certain regulatory enforcement actions may proceed, coupled with an implicit reservation of rights over avoidance actions that may belong to the estate.  The Gilmore Parties' posture is fundamentally different: as named defendants in the State Court Litigation, they face direct and material prejudice if the State is permitted to prosecute estate causes of action in a

non-bankruptcy forum that implicates this Court's core jurisdiction over estate property and administration.

19.     Critically, the State itself has acknowledged that it and the Trustee are "in discussions as to whether any of the State's causes of action overlap with causes of action that the Trustee could also bring."  Until that threshold issue is resolved, it would be premature and prejudicial to grant the State leave to pursue overlapping claims in state court.

## A.    The Automatic Stay Applies and the Police and Regulatory Powers Exception Does Not Exempt All of the State's Claims

20.     Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as an automatic stay of, among other things, "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

21.     Section 362(b)(4) creates an exception to the automatic stay for "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power." 11 U.S.C. § 362(b)(4).

22.     The Fifth Circuit applies two tests to determine whether a government action falls within this exception: (1) the "pecuniary purpose" test, which asks "whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health"; and (2) the "public policy" test, which asks "whether the government is effectuating public policy rather than adjudicating private rights." *In re Halo Wireless, Inc.*, 684 F.3d 581, 588 (5th Cir. 2012). "If the purpose of the law is to protect the

government's pecuniary interest in the debtor's property or primarily to adjudicate private rights, then the exception is inapplicable." *Id.*

23.     Importantly, the burden of establishing an exception to the automatic stay rests with the party claiming the exception. The State bears the burden of proving that each of its claims falls within the police and regulatory powers exception.

**B.     Several of the State's Claims Fail the Pecuniary Purpose Test**

24.     While the Gilmore Parties acknowledge that certain of the State's claims—such as injunctive relief to compel plugging and remediation of wells and prospective enforcement of the Oil and Gas Act—may fall within the traditional exercise of police and regulatory powers, a significant portion of the State's proposed complaint is primarily pecuniary in nature and does not qualify for the Section 362(b)(4) exception.

25.     The State seeks, among other things:

- reimbursement of past and future costs the State has expended or will expend to plug and remediate wells;

- civil monetary penalties under the Oil and Gas Act;

- treble damages under FATA;

- attorneys' fees and costs; and

- money judgments against the Debtor.

26.     These claims seek to fix and recover monetary amounts from the bankruptcy estate, placing the State in the position of a creditor—not a regulator. Because the primary purpose of the vast majority of the State's causes of action is to liquidate and collect a debt, they constitute core proceedings under 28 U.S.C. § 157(b)(2)(B) that belong in this Court—not matters of police power exempt from the stay.

27.     Stripped of their regulatory veneer, the State's claims are at their core a debt-collection effort: the State seeks reimbursement of costs it has expended, treble damages, civil penalties, and money judgments—the hallmarks of a creditor pursuing a claim against the estate, not a sovereign exercising its police power. This Court should not permit the police and regulatory powers exception to be repurposed as a vehicle for priority debt collection outside the bankruptcy process.

28.     The Fifth Circuit has recognized that the police and regulatory powers exception does not apply where the government is primarily acting to protect its pecuniary interest. *In re Halo Wireless*, 684 F.3d at 588.

29.     Here, a substantial portion of the State's claims are designed to establish a right to payment from the Debtor's estate, which is a classic creditor function. The State may indeed be a creditor of the estate, but that status does not entitle it to circumvent the bankruptcy process by seeking to liquidate its monetary claims in a different forum.

30.     The State's own representations confirm this analysis. The State acknowledges that "a state court may liquidate the claim and enter a judgment, but the governmental unit is stayed from enforcing the money judgment against a debtor without an order from the Bankruptcy Court." But this concession underscores the problem: the State's monetary claims, even if reduced to judgment in state court, will ultimately have to be administered in this Court.

31.     There is no reason to permit an expensive, protracted, and duplicative proceeding in state court when this Court can resolve the claims more efficiently.

32.     Even the Fifth Circuit precedent on which the State relies contemplates limits on the exception. In *In re Davis*, 194 F.3d 570, 573 (5th Cir. 1999), the court recognized that the "purpose of the exception is to prevent the bankruptcy court from becoming a haven for

7

wrongdoers." But preventing the bankruptcy court from becoming a "haven" is not the same as depriving the bankruptcy court of its jurisdiction over estate matters. This Court is fully capable of entertaining—and in fact is better positioned to adjudicate—the claims at issue.

**C.  The State's UVTA Claims Are Estate Causes of Action Over Which This Court Has Exclusive Jurisdiction**

33.     The State's UVTA claims (Counts II and III) present the most significant jurisdictional problem with the State's request, because these claims do not belong to the State at all—they belong exclusively to the Trustee.

34.     These claims seek to avoid the transfer of 87 gas wells from Acacia to Solis Partners as actually and constructively fraudulent. The State expressly seeks "avoidance of the transfer so that any positive-value assets may be transferred back to Acacia's estate."

35.     Under established bankruptcy law, fraudulent transfer claims relating to property of a bankruptcy estate belong exclusively to the estate and may only be prosecuted by the trustee. *See* 11 U.S.C. §§ 544, 548; *In re Ozark Rest. Equip. Co.*, 816 F.2d 1222, 1225 (8th Cir. 1987); *In re Racing Servs., Inc.,* 540 F.3d 892, 898 (8th Cir. 2008). The trustee's avoiding powers under Section 544(b) allow the trustee to "avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor," meaning that while state law provides the substantive basis for the claim, it is the trustee who has standing to prosecute it once the bankruptcy case is commenced. 11 U.S.C. § 544(b)(1).

36.     The State cannot circumvent the Trustee's exclusive standing by styling its avoidance claims as state-law UVTA actions; once a bankruptcy petition is filed, the right to pursue fraudulent transfer claims for the benefit of the estate vests exclusively in the Trustee, and no individual creditor—including a governmental unit—may usurp that authority.

8

37.     Avoidance actions under Sections 544 and 548 are at the core of the federal bankruptcy power. These claims are "core proceedings" over which the bankruptcy court exercises jurisdiction under 28 U.S.C. § 157(b)(2)(H). The State cannot unilaterally divest this Court of its jurisdiction over these estate causes of action by styling them as state-law UVTA claims and filing them in state court.

38.     The State itself recognizes the nature of these claims. The State's proposed complaint seeks a declaration that the Acacia-to-Solis transfer is "voidable or fraudulent" and that "any positive-value assets may be transferred back to Acacia's estate." This is an admission that the remedy inures to the estate—not to the State directly. If the transfer is avoided, the assets return to the estate for the benefit of all creditors, subject to the priorities established by the Bankruptcy Code. The State may not leapfrog the orderly claims process by seizing control of estate causes of action in state court.

39.     Moreover, the State has acknowledged that it and the Trustee "are in discussions as to whether any of the State's causes of action overlap with causes of action that the Trustee could also bring." This is a telling acknowledgment. The Trustee's exclusive standing to bring avoidance actions is well established. *See In re Educators Grp. Health Tr*., 25 F.3d 1281, 1284 (5th Cir. 1994) (recognizing trustee's exclusive standing to pursue estate causes of action). Allowing the State to proceed in state court on overlapping claims while the Trustee retains exclusive authority over those same causes of action would create an impermissible conflict and risk inconsistent rulings.

40.     This Court should deny the Motion to Determine at least as to the UVTA claims (Counts II and III), and require that any avoidance actions be brought by the Trustee in this Court, where they properly belong.

**D.**     **The State's Failure to Participate in the Remnant Bankruptcy Undercuts Its Position**

41.     As set forth above, the State had notice of every material event in the Remnant bankruptcy—the filing, the claims bar date,  and the proposed asset sale—yet never filed a proof of claim, never objected to the sale, and never asserted the fraudulent transfer, fraud, conspiracy, or veil-piercing claims it now seeks to bring.  Other New Mexico entities were not similarly passive: the State Land Office filed a Limited Objection to the Sale Motion, arguing that decommissioning obligations had to be assumed and adequate financial assurance provided.

42.     The State's inaction is particularly telling in light of its current theory. The State now alleges that the Individual Defendants drove Remnant into bankruptcy as part of a "fraudulent scheme" to dump environmental liabilities on the State,  and that the transfer of wells to Solis Partners was "concealed from the bankruptcy court and interested parties."  But the State was an interested party in that bankruptcy. It had every opportunity to investigate, assert claims, and seek relief from this Court. It did not do so.

43.     The State's belated attempt to relitigate matters that could and should have been raised during the Remnant Bankruptcy cannot justify lifting the automatic stay in the Acacia case. The State was not a bystander to the Remnant Bankruptcy—it was a noticed party with full knowledge of the proceedings, the claims bar date, and the asset sale, yet it elected to do nothing. Having sat on its rights for the entirety of the Remnant Bankruptcy, the State should not now be permitted to repackage those same grievances in state court as though the Remnant Bankruptcy never occurred. Allowing the State to bypass the bankruptcy court now—after years of inaction—would reward the State's failure to diligently prosecute its interests and prejudice the Gilmore Parties, who are entitled to the orderly administration of the estate in this Court.

**E.**     **The Remnant Bankruptcy's Closure and Reopening Further Supports Retention of Jurisdiction in This Court**

44.     The Remnant Bankruptcy was reopened on July 22, 2025, solely to pursue a discrete asset recovery, and the reopening order did not reimpose the Section 362 automatic stay. The limited nature of the reopening underscores that it was not an invitation for parties to assert new or previously unasserted claims against the Remnant estate.

45.     The two cases are inextricably intertwined. The State's proposed complaint arises directly from the Remnant Bankruptcy sale and subsequent transfers, and the State itself alleges that the Remnant and Acacia bankruptcies were part of a single coordinated scheme. If that is so, then the claims are all the more appropriate for resolution in this Court, where the underlying transactions were consummated and approved. The Remnant Sale Order contains express provisions preserving the State's regulatory claims and addressing environmental obligations, and the interpretation of that order is a core function of this Court. *See* 28 U.S.C. § 157(b)(2)(N). Permitting a New Mexico state court to construe and give effect to a bankruptcy sale order would be an extraordinary and impermissible intrusion upon this Court's jurisdiction.

**F.**     **The Bankruptcy Court Is the Appropriate Forum for the State's Claims**

46.     Wholly apart from the automatic stay issue, this Court is the proper forum for the State's claims for several independent reasons. The UVTA claims fall within core jurisdiction under 28 U.S.C. § 157(b)(2)(H); the State's monetary claims implicate the allowance and estimation of claims under § 157(b)(2)(B); and the interpretation of the Remnant sale order is a core proceeding under § 157(b)(2)(N).

47.     <u>Centralization promotes judicial economy</u>. The State's complaint names seventeen defendants, including two entities in Chapter 7 before this Court and entities that were debtors in the related Remnant bankruptcy. The factual predicates arise from transactions that

11

occurred in, were approved by, or were the subject of proceedings before this Court. Centralizing the dispute here avoids duplicative litigation and the risk of inconsistent judgments.

48.     <u>Creditor interests require centralized administration</u>. The State's complaint seeks to recover assets for the estate, fix monetary liabilities, and pierce corporate veils to reach assets that may be estate property. All of these claims directly affect the administration and distribution of estate assets. Permitting a state court to adjudicate them would create the chaos and inconsistency that centralized bankruptcy jurisdiction is designed to prevent.

49.     <u>The Gilmore Parties' defenses are rooted in bankruptcy law</u>. The Gilmore Parties intend to raise defenses based on the terms of the Remnant sale order, the preclusive effect of this Court's prior orders, the estate's exclusive standing to assert avoidance claims, and the discharge or satisfaction of claims in the Remnant bankruptcy. A state court lacking familiarity with, and jurisdiction over, these proceedings cannot properly adjudicate those defenses.

## G.     Additional Reasons to Deny the Motion

50.     <u>The State seeks impermissible relief against a liquidating Debtor</u>. The State seeks money judgments—including civil penalties, reimbursement, treble damages, and attorneys' fees—against a Chapter 7 debtor that is ceasing operations and liquidating its assets. The State concedes it "may only collect from the Debtors through these bankruptcy proceedings." It also seeks affirmative injunctive relief requiring the Debtor to plug and remediate wells, which is impracticable against a liquidating entity and serves no purpose other than to establish a monetary claim—a function the claims process is designed to address.

51.     <u>The Gilmore Parties face concrete prejudice</u>. As creditors holding a $3,240,000 secured claim through Cibolo Energy Resources and as named individual defendants in the State Court Litigation, the Gilmore Parties would be forced to defend in a remote forum against claims that directly affect estate administration and their rights as parties in interest. Litigating these

matters simultaneously in New Mexico state court and this Court would be unduly burdensome, duplicative, and prejudicial.

52. <u>The State's delay weighs against relief.</u> The State waited nearly a full year—from the Petition Date of December 27, 2024, to the filing of the Motion to Determine on December 22, 2025—to seek this relief. This delay undermines any claim of urgency. During this time, the Trustee has been administering the estate, and the State could have filed proofs of claim, moved for relief from stay, or otherwise asserted its rights in this Court.

## IV. CONCLUSION

53. For the foregoing reasons, the Gilmore Parties respectfully request that this Court enter an Order denying the relief requested in the Motion to Determine, and specifically:

(a) Denying the State's request for a determination that the automatic stay is inapplicable to the State Court Litigation in its entirety;

(b) In the alternative, if the Court determines that certain of the State's claims fall within the police and regulatory powers exception under 11 U.S.C. § 362(b)(4), limiting any such determination to claims for prospective injunctive relief to enforce the Oil and Gas Act, and excluding the State's UVTA claims, monetary claims, and other claims that are pecuniary in nature or constitute estate causes of action;

(c) Ordering that all avoidance actions, including the State's UVTA claims (Counts II and III), be prosecuted exclusively by the Chapter 7 Trustee in this Court; and

(d) Granting the Gilmore Parties such further relief as to which they may justly be entitled.

Dated: February __, 2026

/s/ _____

**JACKSON WALKER L.L.P.**
Jennifer F. Wertz (TX Bar No. 24072822)
Beau H. Butler (TX Bar No. 24132535)
100 Congress Avenue, Suite 1100
Austin, TX 78701
Telephone: (512) 236-2000
Email: jwertz@jw.com
Email: bbutler@jw.com

**JACKSON WALKER LLP**
Robert L. Soza, Jr. (TX Bar No. 18869300)
Reagan M. Marble (TX Bar No. 24087971)
Brandon Durrett (TX Bar No. 24061059)
Robert M. Biedrzycki (TX Bar No. 24111174)
1900 Broadway, Suite 1200
San Antonio, TX 78215
Telephone: (210) 978-7000
Email: rsoza@jw.com
Email: rmarble@jw.com
Email: bdurrett@jw.com
Email: bbiedrzycki@jw.com

***Counsel to Marquis Reed Gilmore Jr, Gilmore Oil & Gas, LP, Bluebird Energy Corporation, Cibolo Energy***

## CERTIFICATE OF SERVICE

This is to certify that on this ___ day of February 2026 a true and correct copy of the foregoing document was served the Court's CM/ECF electronic notification system upon the following:

**Debtor**
Brandon John Tittle
Tittle Law Firm, PLLC
13155 Noel Drive, Suite 900
Dallas, TX 75240
btittle@tittlelawgroup.com

**State of New Mexico and the Oil Conversation Division**
William G., Grantham
Esther C. Jamison
Assistant Attorney Generals
Environmental Protection Division
408 Galisteo Street
Santa Fe, NM 87501
wgrantham@nmdoj.gov
ejamison@nmdoj.gov

**Chapter 7 Trustee**
Herbert C. Shelton, II
Hayward PLLC
7600 Burnet Rd., Suite 530
Austin, TX 78757
cshelton@haywardfirm.com

**New Mexico Oil Conversation Division**
Jessee K. Tremaine
Michael Hall
Assistant General Counsel
Oil Conservation Division
Energy, Minerals and Natural Resources
Department
1220 South S. Francis Dr.
Santa Fe, NM 87505
jessek.tremaine@emnrd.nm.gov

**Midland Central Appraisal District**
Julie Ann Parsons
McCreary Veselka Bragg & Allen, P.C.
PO Box 1269
Round Rock, TX 78680
jparsons@mcbalaw.com

**Midland County**
Perdue, Brandon, Fielder, Collins & Mott, L.L.P
PO Box 817
Lubbock, TX 79408
lmbkr@pbfcm.com

**New Mexico State Land Office**
Lynn Hamilton Butler
Husch Blackwell
111 Congress Avenue, Suite 1400
Austin, TX 78701
lynn.butler@huschblackwell.com

/s/
_____
Beau H. Butler

15