## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### MIDLAND DIVISION

In Re:                                                    Chapter 7
ACACIA OPERATING COMPANY, LLC,                            Case No. 24-70194-SMR
      Debtor

### THE STATE OF NEW MEXICO'S REPLY IN SUPPORT OF ITS MOTION TO DETERMINE INAPPLICABILITY OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(B)(4) TO THE STATE'S ACTION AGAINST DEBTOR[1]

**COMES NOW** the Attorney General of New Mexico on behalf of the State of New Mexico and the Oil Conservation Division ("OCD") of the New Mexico Energy, Minerals and Natural Resources Department (collectively, "New Mexico" or "the State"), and replies to the Objection filed by Marquis Reed Gilmore, Gilmore Oil & Gas, LP, Bluebird Energy Corporation, and Cibolo Energy (the "Gilmore Parties") to the State's Motion to Determine Inapplicability of the Automatic Stay Pursuant to 11 U.S.C. § 362(B)(4) ("Motion").

### I.    OVERVIEW

As explained further below, the Gilmore Parties' Objection ("Objection") is without factual or legal merit, for five main reasons: (i) the Gilmore Parties lack standing to object; (ii) the State has standing to bring these claims; (iii) State courts have concurrent jurisdiction over these claims and New Mexico state court is the appropriate forum; (iv) the State's case fits squarely within the police and regulatory powers exception to the automatic stay under 11 U.S.C. § 362(b)(4); (v) Under 28 U.S.C. §959(b), the Trustee must manage estate property in accordance with State laws, including plugging and remediation requirements; and (vi) the Gilmore Parties' timeliness arguments are unavailing. The State renews its request for the Court to grant the State's Motion and allow the State's case to proceed in New Mexico state court.

---

[1] Although the Gilmore Parties only filed their Objection in the Acacia Operating proceeding, out of an abundance of caution, the State will file an identical reply in the Acacia Resources proceeding.

## II.     <u>THE GILMORE PARTIES LACK STANDING TO OBJECT</u>.

1.     The Gilmore Parties include: Gilmore Oil & Gas, LP; Bluebird Energy Corporation; Cibolo Energy ("Cibolo"); and Marquis Reed Gilmore, Jr. ("Gilmore"), and not one of these parties has standing to object to the State's Motion.

2.     *First* Gilmore Oil & Gas, LP and Bluebird Energy Corporation are not creditors in these cases, as they did not file proofs of claim, and the deadline to do so has passed.[2] Further, these companies are also not interested parties, as the outcome of these cases should have no effect on them. As such, Gilmore Oil & Gas, L.P. and Bluebird Energy Corporation do not have standing to object.

3.     *Second*, While Cibolo is listed as a purported secured creditor[3] in the Acacia Resources, LLC bankruptcy, Cibolo has forfeited its charter under Texas law[4] and, thereby, its right to conduct business in the State of Texas. As such, it cannot avail itself of the State or Federal Courts systems. *Faulkner v. Kornman*, 2015 Bankr. LEXIS 3595, at *9 (Bankr. S.D. Tex. October 23, 2015) ("Under Texas law, a corporation may forfeit its corporate privilege to bring and defend suits in Texas courts, state or federal, for failure to satisfy certain tax liabilities.") Tex. Tax Code §§ 171.251-171.252; *In re ABZ Ins. Servs. Inc.*, 245 B.R. 255, 261 (Bankr. N.D. Tex. 2000). As such, Cibolo does not have standing to object.

4.     *Third*, Marquis Reed Gilmore is not a creditor in these cases. While Gilmore could be considered an interested party due to his equity interest in Acacia Resources, LLC, he is not an interested party that has standing to bring this objection. This is because there is no possibility for

---

[2] Exhibit A – Claims registers for Acacia Resources, LLC and Acacia Operating Company, LLC bankruptcy cases.
[3] Cibolo states that it has a secured claim in the amount of $3,240,000; however, the State believes this secured claim should be challenged and potentially recharacterized or subordinated in this case. The State does not concede that Cibolo's claim is valid.
[4] Exhibit B – Texas Secretary of State Certificate of Fact and Texas Comptroller Certification of Entity Status.

there to be a surplus of funds in this case, and, as such, he has no pecuniary interest in this case. *See In re Okorie*, 2024 U.S. App. LEXIS 25700 at *4 (5th Cir. 2024); *In re Magnesium Corp. of Am.*, 583 B.R. 637, 649–50 (Bankr. S.D.N.Y. 2018); and *In re Team Sys Int'l, LLC*, 2024 U.S. Dist. LEXIS 221540 at *8–12 (Dist. DE, Dec. 6, 2024). For instance, the claim filed by the Department of Interior, Bureau of Land Management in the amount of $21,357,530.00 is for outstanding plugging, remediation, and other environmental liabilities. *See* Claim #5. If the DOI or the State of New Mexico is required to complete plugging and remediation, those claims would be administrative expense claims in this case. *In re H.L.S. Energy Co.*, 151 F.35 434, 437–38 (5th Cir. 1998). With such large environmental liabilities, no money will flow back to equity, and, as such, Gilmore does not have standing to object.

## III.   THE STATE HAS STANDING TO BRING THESE CLAIMS.

5.     To the extent there is any question as to the State's standing to litigate the Uniform Voidable Transactions Act ("UVTA") and unjust enrichment claims, this Court may grant the State derivative standing. Derivative standing is appropriate here because:: (A) the Trustee consents to the State's case, including its UVTA and unjust enrichment claims; and (B) granting the State derivative standing is necessary and beneficial to the Acacia Estates.

### A.   The Trustee Consents to the State's Suit and so This Court May Grant the State Derivative Standing.

6.     The State agrees that the Trustee could theoretically bring UVTA and unjust enrichment claims pursuant to 11 U.S.C. § 544 by standing in the shoes of the State and other impacted creditors.[5] *Matter of Zedda*, 103 F.3d 1195, 1202 (5th Cir. 1997) ("For purposes of §

---

[5] To the extent that Gilmore's exclusive standing argument rests on the Trustee's standing to bring fraudulent transfer claims under 11 U.S.C. § 548, it fails here. Under the facts currently known to the State, the Trustee's ability to bring fraudulent transfer claims under 11 U.S.C. § 548 is time-barred, because the transactions and transfers at issue in the State's UVTA and unjust enrichment claims occurred more than two years before the Debtor filed its bankruptcy petition on December 27, 2024. *Compare* Complaint ¶¶ 126–35 (attached to State's Stay Motion as Exhibit A), *with*

544 of the Bankruptcy Code, the Trustee stands in the shoes of a hypothetical creditor."). But the State does not concede Gilmore's argument that the Trustee has "exclusive standing" to bring § 544 claims—especially when those very claims are based on the State's own standing and injuries to the State's sovereign and regulatory interests. In fact, none of the cases cited by Gilmore support the application of that blanket assertion to this case.

7.  <u>First</u>, Gilmore cites *In re Educators Group Health Trust*, 25 F.3d 1281 (5th Cir. 1994)), for the assertion that the Trustee has "exclusive standing to bring avoidance actions." Obj. ¶ 39. But the Fifth Circuit in *In re Educators* cites *Matter of S.I. Acquisition* for the proposition that if the claim is property of the estate, this simply "requires that the trustee have the *first opportunity* to pursue estate actions without interference from individual creditors." *In re Educators*, 25 F.3d at 1284 (citing *Matter of S.I. Acquisition*, 817 F.2d 1142, 1153–54 (5th Cir. 1987)) (emphasis added). Such concerns are inapposite where, as here, the State consulted with the Trustee before filing its Complaint and obtained the Trustee's consent. *See* Trustee Resp. ¶ 1. Further, the State has already addressed *S.I. Acquisition*'s primary concern that, if its action is not stayed, "it would collect its claim from a pool of assets that should be available to all creditors." *S.I. Acquisition*, 817 F.2d at 1153. The State did so by attesting that it will not collect on any judgment arising from its UVTA and unjust enrichment claims in State court but will bring them back to this Court. *See* Motion ¶ 24.

8.  In addition, *In re Educators* does not stand for the proposition that *all* fraudulent transfer claims are *always* exclusively property of the estate. *In re Educators*, 25 F.3d at 1284. Rather, the Fifth Circuit distinguished between instances where a plaintiff's *only* alleged harm derives from harm to the debtor—in which case the cause of action belongs to the estate—and

---

11 U.S.C. § 548 ("The trustee may avoid any transfer . . . that was made or incurred on or within 2 years of the filing of the petition.").

instances where the plaintiff alleges a *direct* injury, in which case the cause of action belongs to the plaintiff. 25 F.3d at 1284–85. Here, the State's UVTA and unjust enrichment claims allege direct injury to the State resulting from the fraudulent transfer of 87 wells from Acacia to Solis Partners and resulting in the lack of resources within Acacia to satisfy the plugging obligations for the remaining wells. The State's claims are grounded in its status as the ultimate plugger of last resort for these wells, regardless of who owns them, not merely due to its status as one of Acacia's creditors. As further explained below in Section IV, the State's interests and injury extend beyond any potential financial recovery, and encompass the State's policy interests in environmental protection, prevention of waste of oil and gas resources, and deterrence and prevention of fraud. In this way, the State is different from a traditional creditor whose interest is limited to a financial interest in whatever recovery is available to the estate.

9.      *Second*, Gilmore cites *In re Ozark Restaurant Equipment Co.*, but that case stands only for the unremarkable proposition that a trustee is empowered to bring causes of action that were available to the debtor at the time of filing. 816 F.2d 1222, 1225 (8th Cir. 1987) (ultimately holding that the trustee lacked standing to assert the specific claim at issue).

10.      *Third*, *In re Racing Services*, supports the State's position. In that case, the Eighth Circuit held "that a creditor may proceed derivatively when the trustee (or debtor-in-possession) consents (or does not formally oppose) the creditor's [avoidance action] suit." 540 F.3d 892, 902 (8th Cir. 2008). So too, here. Here, the Trustee filed a "Limited Objection and Response" to the State's automatic stay motion in which the Trustee stated that he "does not oppose the State of New Mexico's . . . primary request for an order declaring the automatic stay inapplicable to its ongoing investigation and proposed state-court proceedings pursuant to the 'police and regulatory power' exception of 11 U.S.C. § 362(b)(4)." Trustee Resp. ¶ 1. The Trustee's only qualification to

5

this formal statement of non-opposition was the request "that any order granting the Motion include language clarifying that the Court is not making a final determination as to the ownership of the specific causes of action." Trustee Resp. ¶ 7. Because the Trustee has formally consented to the State's litigation all of its claims—including its UVTA and unjust enrichment claims—Gilmore's own cited authority supports this Court granting the State's motion and allowing the state court action to proceed.[6]

11.      In sum, to the extent that derivative standing is necessary for the State to bring UVTA and unjust enrichment claims that the Trustee could potentially also bring under 11 U.S.C. § 544 by standing in the State's shoes, the Trustee has given the State that consent.

### B.      The State's Derivative Standing Is Necessary and Beneficial to the Fair and Efficient Resolution of the Bankruptcy Proceedings.

12.      This Court has the authority to grant an individual creditor standing to pursue claims available to the estate. *In re Tidewater Landfill LLC*, 674 B.R. 218, 224–25 (Bankr. E.D. La. July 16, 2025) (citing, inter alia, *La. World Exposition v. Fed. Ins. Co*., 858 F.2d 233 (5th Cir. 1988)). Courts have recognized that a creditor in a Chapter 7 case can secure standing to pursue an avoidance action where, as here, the trustee expressly consents to transfer that power to a creditor with the bankruptcy court's approval. *In re Wilson*, 527 B.R. 253, 257 (Bankr. N.D. Tex. 2015) (citing *Avalanche Maritime, Ltd. v. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029, 1031 (9th Cir. 1999)).

13.      When the Trustee consents to a grant of derivative standing, the primary question is "whether the claims are 'colorable.'" *In re Tidewater Landfill*, 2025 WL 2013686, at *3 (citing a case that draws on *Louisiana World*, 858 F.2d at 247). This standard "should be tied to a

---

[6] The State does not concede that it could not proceed with its UVTA claims absent express formal consent from the Trustee, but the Court need not address that issue given the Trustee's consent in this case.

bankruptcy court's finding that pursuit of the claims is in the best interest of the estate and is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings." *Id.* (citing *PW Enters., Inc. v. N.D. Racing Comm'n*, 540 F.3d 892, 902 (8th Cir. 2008)).

14.     Here, the State is a creditor as to each Debtor, with claims for plugging costs, unpaid penalties, and additional amounts owed. Indeed, many of the State's claims are based entirely on public record documentation and data and are colorable on their face. Nor have the Gilmore Parties disputed the colorability of any of the State's claims. The State is likely to prevail in the proposed state court action. The Complaint provides abundant evidence documenting the proposed defendants' wrongdoing. The State is confident that additional evidence will be forthcoming through discovery. The facts described fit soundly within the statutory frameworks of the New Mexico Oil and Gas Act, the UVTA, the Fraud Against Taxpayers Act ("FATA"), and caselaw pertaining to unjust enrichment and civil conspiracy.

15.     Derivative standing is necessary to the fair and efficient resolution of the bankruptcy proceedings because, unlike the Trustee, the State has resources to prosecute this claim for the benefit of the Debtors' creditors. *See In re Tidewater Landfill*, 2025 WL 2013686, at *5 ("[T]he Trustees cited the fact that the estate currently lacks funding to pursue those estate claims and that [the State agency's] 'prosecution of the Alter Ego/SBE Claims serves to increase the recovery of funds for the mutual benefit of the Estates at no cost.'" (citing record)). Similarly to the allegations in *Tidewater Landfill*, the allegations in the State's complaint "implicates others' complicity and liability with the Debtors in causing and failing to remediate significant environmental harm." *Id.* The State's case reaches many more parties than just the Debtors.

16.     Allowing the State—which is comprised of "entit[ies] charged with enforcing environmental statutes intended to protect the public from the effects of hazardous waste and

7

pollution," including plugging and remediation obligations for oil and gas wells—"to prosecute and liquidate these claims along side the estates' claims is not only necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings and in the best interests of the estates, but is also in the best interests of the public and public policy." *Id.*

17.     It is evident that the State's UVTA and unjust enrichment claims would bring value back into the Acacia Estates. In addition to failing to argue that the State's claims are not colorable, the Gilmore Parties have not explained why prosecution of the State's claims would *not* be beneficial to the Acacia Estates. Rather, they couch their objections in terms of standing, jurisdiction, and forum: arguments which, even if they had merit, have no bearing on whether the claims in this case are beneficial and necessary to the Estates.

18.     In conclusion, it would be beneficial for, and in the best interest of, the Acacia Estates for this Court to grant the State derivative standing to the extent necessary to bring these claims.

## IV.     NEW MEXICO STATE COURT HAS CONCURRENT JURISDICTION TO HEAR THESE CLAIMS AND IS THE APPROPRIATE FORUM FOR THIS DISPUTE.

19.     State courts have concurrent jurisdiction with bankruptcy courts to hear UVTA claims. *See In re Rosenblum*, 545 B.R. 846, 854 (Bankr. E.D. Pa. 2016) ("A bankruptcy court has original and concurrent, but not exclusive, jurisdiction to resolve actions under § 544(b) to avoid state fraudulent transfer claims related to a debtor's bankruptcy proceeding. However, the state court also has concurrent jurisdiction to resolve such claims."). Therefore, the trustee may consent to the UVTA claims being litigated in state court.

20.     Tellingly, the Gilmore Parties' real complaint is not a legal challenge to State-court jurisdiction but a pragmatic one arising from convenience. They complain that they would be "forced to defend in [the] remote forum" of New Mexico state court. Yet, New Mexico was not so

8

remote for the Gilmore Parties when it came to transacting business and extracting profits. *See* N.M. Stat. Ann. § 38-1-16(a)(1) (explaining that any person who transacts business within New Mexico "submits himself . . . to the jurisdiction of the courts of this state"). If the Gilmore Parties were able to avail themselves of the natural resources of New Mexico and extract revenue here over the course of nearly two decades, it should not be too much to ask that they be held accountable here for the environmental and regulatory obligations they have abandoned.

21.     In any event, the Gilmore Parties will be required to litigate in New Mexico State Court because pursuant to 28 U.S.C §1452, civil actions by the State to enforce the State's police and regulatory powers cannot be removed. The causes of action brought by the State pursuant to the New Mexico Oil and Gas Act and the Fraud Against Taxpayers Act are enforcement of the State's police and regulatory authority and cannot be removed.

22.     Next, the Gilmore Parties argue that this Court is better equipped to adjudicate the State's causes of action. But New Mexico State courts are just as well equipped to look at written statements and representations made to regulatory bodies and adjudicate their veracity as any other court and are specifically well equipped to interpret matters of New Mexico State law. Adjudicating FATA claims against Remnant and the Gilmore Parties has nothing to do with—and does not require construction of any bankruptcy court orders, nor does it require the specialist knowledge and expertise of a bankruptcy court.

23.     Contrary to what the Gilmore Parties imply, the State is not bringing a UVTA claim to unwind the sale of assets from Remnant to Acacia in the Remnant bankruptcy proceedings.[7] The only purpose of mentioning the Remnant Bankruptcy is to put the State's FATA claims and recent events into perspective. Yes, the State Land Office put guardrails on Newco/Acacia's

---

[7] As of March 4, 2026, the Remnant bankruptcy has once again been closed.

acquisition of the Remnant assets—adding language to the Sale Order that preserved governmental claims and clarifying that they would not be discharged in that bankruptcy but would be passed on to Acacia. Nothing in the Remnant Bankruptcy relieved Acacia from the duty to comply with the State's laws.

24.     The State adequately protected its interests, given what was known to the State at that time. Now, however, in light of a *second* bankruptcy involving the same individuals and the same wells—and with the almost certainty that numerous wells will be left to the State to plug and remediate—the State is entitled to enforce its laws.

25.     For pragmatic reasons, too, State court is the most appropriate forum for the adjudication of the disputes in the State Complaint. Both plaintiff agencies are based in New Mexico, the conduct at issue in the complaint was performed in New Mexico, the real-property at issue is located in New Mexico, and New Mexico is likely home to the vast majority of the evidence and witnesses needed to litigate this case. Further, because the causes of action brought by the State pursuant to the New Mexico Oil and Gas Act and the Fraud Against Taxpayers Act are enforcement of the State's police and regulatory authority and cannot be removed, all claims based on these facts and circumstances should be heard in the State Court in order to assure a consistent ruling and to save money by not duplicating efforts by litigating in two forums.

26.     In sum, the New Mexico state court has jurisdiction to hear this dispute and is the appropriate forum.

## V.     GILMORE'S CONCLUSORY POLICE AND REGULATORY POWERS ARGUMENTS FAIL.

27.     Separate from the issue of standing and jurisdiction, the automatic stay poses no barrier to the State's case because the claims and relief in that lawsuit fall squarely within the police and regulatory powers exception provided by 11 U.S.C. § 362(b)(4). The State's case

furthers the State's non-pecuniary policy interests in environmental protection, prevention of waste of oil and gas resources, and deterrence and prevention of fraud; those claims therefore fall squarely within the exception.

28.     The Gilmore Parties' argument that the State's primary purpose in bringing this case is pecuniary is unpersuasive. The Gilmore Parties assert in conclusory fashion that several of the remedies the State seeks are pecuniary in nature. Obj. ¶ 24–26. But they do not grapple with the caselaw and legislative history the State cited in its Motion to support why each of these remedies falls clearly within the police and regulatory powers exception. *Compare* Motion ¶ 18 (explaining why reimbursement for well plugging costs falls within the exception and citing *Matter of Commonwealth Oil Ref. Co., Inc.*, 805 F.2d 1175, 1177 (5th Cir. 1985), and *United States v. Nicolet, Inc.*, 857 F.2d 202, 207–10 (3d Cir. 1988)); *id.* ¶ 19–20 (explaining why actions taken to address fraud fall within the exception, and citing *S.E.C. v. Towers Fin. Corp.*, 205 B.R. 27, 31 (S.D.N.Y. 1997), H. R. Rep. No. 95-595, 343 (1977), and S. Rep. No. 95-989, 52 (1977)), *with* Obj. ¶¶ 26–27 (citing no caselaw).

29.     All the Gilmore Parties have is a conclusory assertion that the State is acting "primarily . . . to protect its pecuniary interest." Obj. ¶ 28 (citing *In re Halo Wireless, Inc.*, 684 F.3d 581, 588 (5th Cir. 2012)). Their citation to *Halo Wireless* is no more than a reference to the rule itself. They engage in no analysis to explain why their subjective opinion about the State's motives and primary purpose should carry any weight whatsoever. Nor do the Gilmore Parties grapple with the State's reasoning and supporting caselaw stating that the mere existence of some pecuniary interest "does not prevent application of the exception, so long as the action is rooted in public policy interests and the government is "acting to vindicate something more than a pecuniary interest." *In re Wyly*, 526 B.R. 194, 198 (Bankr. N.D. Tex. 2015); *see also In re Express Grain*

*Terminals, LLC*, No. 21-11832-SDM, 2022 WL 1051097, at *7 (Bankr. N.D. Miss. Apr. 7, 2022) (unreported opinion) ("[E]ven if the [state's] actions are pecuniary in nature, they only need to show or vindicate an additional basis for its actions to pass the requisite standard.").

30.     A quick glance at the factual and legal scope of the State's complaint should suffice to show that the State's interests in this case transcend any narrow focus on what pecuniary recovery may or may not be available at the end of this case. As the State explained in its Motion:

> The purposes of the proposed state-court lawsuit are to: punish and deter fraudulent transfers intended to avoid regulatory duties and environmental liabilities; enforce the plugging and remediation provisions of the Oil and Gas Act and its regulations; prevent further environmental harm by effecting the timely plugging and remediation of inactive oil and gas wells; recover restitution or reimbursement of costs the State has already expended; punish and deter fraudulent representations to the State; prevent the defendants from further harming the State in the future; and deter other operators from engaging in similar conduct.

Motion ¶ 25. The Gilmore Parties make no effort to legally or factually rebut this description of the State's purpose, and so their arguments on police and regulatory powers exception should be rejected.

## VI.     PURSUANT TO 28 U.S.C. §959(B), THE TRUSTEE MUST COMPLY WITH STATE LAWS.

31.     While the Gilmore Parties argue that it is "impracticable" to seek an injunction against the Debtors requiring the Debtors to plug and remediate wells, it is actually the Trustee's duty under the law to manage these wells in compliance with State laws. *See* 28 U.S.C. §959(b). Simply filing a bankruptcy does not relieve a Debtor from its responsibility to plug wells and remediate the environment its business utilized.

32.     Further, in *Midlantic Nat'l Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494 (1986) the Supreme Court ruled that a bankruptcy trustee cannot abandon environmentally contaminated property in contravention of environmental laws that protect human health, safety, and the environment.

33.     In the current case, the Debtors' wells are creating a significant risk to human health, safety, and the environment by, *inter alia*, leaking oil and other substances onto the ground and emitting gasses and other contaminants into the air. As such, the Trustee must either plug and remediate the Debtors' property, sell the property to one who can and will remediate and plug, or dismiss the bankruptcy case for the inability to follow the law.

34.     The injunction by the State is not impractical; rather, it is a clear use of the State's police and regulatory powers. Just because a bankruptcy is filed does not mean the State loses the right to enforce State laws designed to protect human health, safety, and the environment.

## VII.     THE GILMORE PARTIES' TIMELINESS ARGUMENTS ARE INCORRECT AND UNAVAILING.

35.     Finally, the Gilmore Parties attempt to paint the State's case as untimely, casting the State as having stood idly by during the Acacia bankruptcy. Nothing could be further from the truth. Once the State learned about the Acacia bankruptcy, it started its factual investigation and filed proofs of claims in both the Acacia Resources and Acacia Operating dockets on behalf of both the State of New Mexico and the Oil Conservation Division.[8] That the State's investigation and resulting 72-page Complaint and bankruptcy motion took months to research, prepare, and file speaks more to the complexity and breadth of the defendants' scheme than it does to the State's efficiency.  The Gilmore Parties' timeliness arguments are incorrect on the facts and irrelevant on the law.

---

[8] *See Proof of Claim # 6*, filed May 20, 2025, by the New Mexico Department of Justice; *Proof of Claim #16*, filed June 25, 2025, by the New Mexico Energy, Minerals, and Natural Resources Department, in *Claims Register* for Acacia Operating Company, LLC, 24-70194; *Proof of Claim #12*, filed June 25, 2025, by the New Mexico Department of Justice; *Proof of Claim #13*, filed June 25, 2025, by the New Mexico Energy, Minerals, and Natural Resources Department, in *Claims Register* for Acacia Resources, LLC, 24-70195.

## VIII.  <u>CONCLUSION</u>

WHEREFORE, the State prays that the Court enter an order finding that the State's proposed state-court action is exempt from the automatic stay pursuant to 11 U.S. C. § 362(b)(4), and that there are no other barriers to the State's pursuit of that action, and for any other relief to which the Court finds the State entitled.

DATED: March 10, 2026,                              Respectfully submitted,


<u>/s/ Abigail Rushing Ryan</u>                           <u>/s/ Esther C. Jamison</u>
Abigail Rushing Ryan                                Raúl Torrez
State TX Bar No. 24035956                           *Attorney General*
*Bankruptcy Counsel*                                 William G. Grantham
National Association of Attorneys General            Esther C. Jamison
1850 M Street NW, 12th Floor                        *Assistant Attorneys General*
Washington, DC 20036                                Environment Protection Division
aryan@naag.org                                      New Mexico Department of Justice
                                                    408 Galisteo Street
                                                    Santa Fe, NM 87501


ATTORNEYS FOR THE STATE OF NEW MEXICO AND THE OIL CONSERVATION DIVISION OF THE NEW MEXICO ENERGY, MINERALS, AND NATURAL RESOURCES DEPARTMENT


***(Remainder of Page Intentionally Left Blank – Certificate of Service Follows)***

## CERTIFICATE OF SERVICE

I certify that on March 10, 2026, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Western District of Texas on the parties below via email.

/s/Abigail Rushing Ryan
Abigail Rushing Ryan
Bankruptcy Counsel

**Debtor**
Brandon John Tittle
Tittle Law Firm, PLLC
13155 Noel Drive, Suite 900
Dallas, TX 75240
btittle@tittlelawgroup.com

**Chapter 7 Trustee**
Herbert C. Shelton, II
Hayward PLLC
7600 Burnet Rd., Suite 530
Austin, TX 78757
cshelton@haywardfirm.com

**Midland Central Appraisal District**
Julie Ann Parsons
McCreary Veselka Bragg & Allen, P.C.
PO Box 1269 Round Rock, TX 78680
jparsons@mcbalaw.com

**Midland County**
Perdue, Brandon, Fielder, Collins & Mott, L.L.P.
PO Box 817
Lubbock, TX 79408
lmbkr@pbfcm.com

**New Mexico State Land Office**
Lynn Hamilton Butler
Husch Blackwell
111 Congress Avenue, Suite 1400
Austin, TX 78701
lynn.butler@huschblackwell.com

**New Mexico Oil Conversation Division**
Jessee K. Tremaine and Michael Hall
Assistant General Counsels
Oil Conservation Division
Energy, Minerals and Natural Resources Department
1220 South S. Francis Dr.
Santa Fe, NM 87505
jessek.tremaine@emnrd.nm.gov

**Marquis Reed Gilmore Jr, Gilmore Oil & Gas, LP, Bluebird Energy Corporation, Cibolo Energy**

Jennifer F. Wertz
Beau H. Butler
Jackson Walker, LLP
100 Congress Avenue, Suite 1100
Austin, TX 78701
Email: jwertz@jw.com
Email: bbutler@jw.com

*and*
Robert L. Soza, Jr.
Reagan M. Marble
Brandon Durrett
Robert M. Biedrzycki
1900 Broadway, Suite 1200
San Antonio, TX 78215
Email: rsoza@jw.com
Email: rmarble@jw.com
Email: bdurrett@jw.com
Email: bbiedrzycki@jw.com