**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 24-70194 |
| **ACACIA OPERATING COMPANY, LLC**, | § | |
| | § | Chapter 7 |
| Debtor. | § | |
| | § | |
| | § | |
| IN RE: | § | |
| | § | Case No. 24-70195 |
| **ACACIA RESOURCES, LLC**, | § | |
| | § | Chapter 7 |
| Debtor. | § | |

**LIMITED OBJECTION OF THE UNITED STATES TO**
**CHAPTER 7 TRUSTEE'S MOTIONS TO APPROVE SALE OF CERTAIN**
**OIL AND GAS LEASES AND RELATED PROPERTY**

The United States, on behalf of the United States Department of the Interior

("Department of the Interior"), through the Office of Natural Resources Revenue ("ONRR"), and

the Bureau of Land Management ("BLM"), files this limited objection to the Chapter 7 Trustee's

Motions to Approve Sale of Certain Oil and Gas Leases and Related Property filed in the above-

captioned cases (the "Sale Motions"). In support of this Limited Objection, the United States

respectfully states as follows:

**BACKGROUND**

1. At all relevant times, the Department of the Interior was and is the agency of the

United States charged with, *inter alia,* discretionary authority over the management of oil and

gas rights on federal onshore lands, Mineral Leasing Act of 1920 (MLA), 30 U.S.C. §§ 181 *et.*

*seq*., the Mineral Leasing Act for Acquired Lands of 1947, 30 U.S.C. §§ 351 *et seq*., and other

applicable Acts.

1

2.      These statutes and their implementing regulations prohibit the assignment and operation of Federal contracts and leases without the approval of the Secretary of Interior. Prerequisites to such approval include, but are not limited to, the cure of defaults on existing Federal contracts and leases, the assumption of decommissioning obligations, the posting of appropriate bonds or other security, and the qualification of the assignee to hold a lease or other agreement.

3.      The statutes and regulations further provide that a former lessee/assignor/transferor continues to be responsible for decommissioning, plugging and abandonment obligations (collectively "Decommissioning Obligations") that accrued before the approval date of any lease assignment until such Decommissioning Obligations are satisfied. *See, e.g.*, 43 C.F.R. § 3106.72.

4.      Additionally, applicable regulations require operators to promptly satisfy their Decommissioning Obligations on wells which are no longer capable of producing in paying quantities or not being used for water injection or disposal purposes. *See, e.g.*, 43 C.F.R. § 3162.3-4. No well may be temporarily abandoned for more than 30 days without authorization. *Id.* And, of course, an operator must conduct operations in a manner which protect the mineral resources, other natural resources, and environmental quality. *See, e.g.*, 43 C.F.R. § 3162.5-1.

5.      On December 27, 2024, Acacia Operating Company, LLC and Acacia Resources, LLC (collectively the "Debtors") filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code.

6.      Ron Satija ("Trustee") was appointed as the Chapter 7 Trustee in both cases.

7.      The primary assets of the Debtors' estate include oil and gas leases, wells, and mineral rights located in New Mexico.

8.     The Trustee received and accepted an offer from American Energy Resources, LLC (the "Buyer") to purchase certain assets from both Debtors' estates for $40,000.00.[1]

9.     Relevant to the United States' Limited Objection, the Buyer's offer, among other things, appears to include the transfer of wells governed by Federal oil and gas leases.

10.     The Sale Motions seek the approval of the sale to the Buyer pursuant to Section 363 of the Bankruptcy Code.[2]

**A.  Assumption and Assignment of Interests in Federal Leases.**

11.     Section 365(b) of the Bankruptcy Code provides that a trustee may not assume an executory contract or unexpired lease of the debtor unless: (1) the estate cures the default or provides adequate assurance of a prompt cure; (2) compensates the nondebtor party to the contract or lease for the pecuniary loss suffered from the default; and (3) provides adequate assurance of future performance under the contract or lease. 11 U.S.C. § 365(b)(1)(A)-(C).

12.     Further, a trustee may not assume or assign any executory contract or unexpired lease held by the debtor if applicable law excuses the other party from accepting performance from a party other than the debtor and such party does not consent to such assumption or assignment. 11 U.S.C. § 365(c)(1).

13.     Consistent with the Bankruptcy Code, other statutory law also provides that no Federal lease may be assigned or sublet or otherwise transferred without the consent of the Secretary of Interior. 30 U.S.C. § 187(a).

14.     The agencies' regulations also require specific approval for assumption and assignment of Federal oil and gas interests. BLM regulation, 43 C.F.R. § 3106.1, requires

---

[1] A full list of the purchased assets and rights (the "Assets") are set forth in the Purchase and Sale Agreements attached to the respective Sale Motions.

[2] The Trustee agreed to extend the United States' response deadline to April 3, 2026.

approval of assignments or transfers of federal leases and agreements. ("The rights of the transferee to a lease or an interest therein will not be recognized by the [Interior] until the transfer has been approved by the authorized officer.").

15. What is more, Federal law precludes a trustee from assuming a Federal contract or lease absent consent from the United States because it is imperative to preserve the Government's ability to determine with whom to do business. The Assignment of Contracts Act, 41 U.S.C. § 6305, and its analog, the Assignment of Claims Act, 31 U.S.C. § 3727. *See Vt. Yankee Nuclear Power Corp. v. United States*, 73 Fed. Cl. 236, 240 (Fed. Cl. 2006).

16. Under the Assignment of Contracts Act, a trustee may not assume and assign a contract with the United States without first obtaining its consent. *In re West Elec., Inc.*, 852 F.2d 79, 83 (3d Cir. 1988). This consent requirement, inherent in the Assignment of Contracts Act and the applicable regulations, allows the United States to ensure the transferee's compliance with the various requirements attendant to a transfer of the leases. *See* 43 C.F.R. Subpart 3106; 25 C.F.R. Part 212.

17. Here, that means that the Trustee may not assume and assign any of the Debtors' interests in the Federal oil and gas leases without the specific approval of the Secretary of Interior. And such approval is contingent upon the Debtors' estates meeting all of the regulatory criteria for such consent, *inter alia*, cure of any and all lease/contract defaults, adequate financial assurances relating to bonds, etc., and assumption of all obligations, including audit and Decommissioning Obligations.

18. Accordingly, in order for the Trustee to assume and assign the Debtors' Federal oil and gas interests, any and all defaults must be cured, including pre- and post-petition royalties and interest accrual owed to ONRR on those leases and agreements, or provide adequate

assurance that such defaults will be cured, 11 U.S.C. § 365(b)(1)(A), and the Buyer must assume associated Decommissioning Obligations and other audit-related obligations.

19. In sum, any assumption and assignment of a Federal lease requires the consent of the United States. *See* 11 U.S.C. § 365(c)(1); 41 U.S.C. § 6305; 30 U.S.C. § 187(a); 25 U.S.C. § 396; 25 CFR § 212.53; 43 C.F.R. § 3106.1. As discussed below, neither the Trustee nor the Buyer has met the requirements for the Secretary's approval and assignment of the Leases and Contracts.

**B. The Estates' Decommissioning Obligations**

20. Pursuant to the Mineral Leasing Act of 1920, 30 U.S.C. §§ 181 *et seq.*, and the Mineral Leasing Act for Acquired Lands of 1947, 30 U.S.C. §§ 351 *et seq.*, the regulations enacted pursuant thereto, notices to lessees, the terms of the leases, and other applicable provisions of the law, the Debtors are obligated to protect and conserve the natural resources of the Federal lands, as well as private lands where mineral rights have been retained by the Federal Government.

21. These obligations include, but are not limited to, the performance of the Decommissioning Obligations. More specifically, these obligations require a lessee or operator to: (1) timely and completely plug all wells; (2) environmentally reclaim the lease area(s); (3) restore any water or lands that are adversely affected by the lease operations; (4) remedy all environmental problems in existence at the lease area(s); and (5) submit a surety bond or personal bond accompanied by negotiable Treasury securities, cashier's check, certified check, certificate of deposit, or irrevocable letter of credit in an amount deemed adequate by the United States to ensure compliance with the law. *See, e.g.*, 43 C.F.R. § 3104.1; 43 C.F.R. § 3104.2; 43 C.F.R. § 3104.3; 43 C.F.R. § 3104.50(b); 43 C.F.R. § 3106.6-1.

22.     Decommissioning Obligations arise when there is an approved application to drill on the lease or there is an unplugged well on the lease. 43 C.F.R. § 3106.6-1. Once accrued, lessees, owners of operating rights, and all holders of a right-of-way are responsible for meeting these Decommissioning Obligations until each is satisfied. *Id.*

23.     Pursuant to the terms of the lease instruments and the regulations, performance of these Decommissioning Obligations, however, is generally not due until production is abandoned or the lease expires. 43 C.F.R. § 3106.76.

**LIMITED OBJECTION**

**A.   Section 363 Does Not Impact Environmental Compliance Obligations**

24.     The United States, through various agencies, is charged with regulatory responsibility for oversight of protection of public health and the environment under several environmental statutes, including the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.*; Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.*; Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*; Oil Pollution Act, 33 U.S.C. §§ 2701 *et seq.*; Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*; and Toxic Substances Control Act, 15 U.S.C. §§ 2601 *et seq.* These statutes and similar statutes under state law are designed to ensure that owners or operators of facilities using, releasing, or storing hazardous substances or waste take necessary steps to protect the public from serious environmental dangers. In addition to the BLM regulations, lessees and oil and gas operators must act according to these statutes and regulations when applicable.

25.     No one should be permitted to use the bankruptcy laws to evade compliance with environmental obligations. "Bankruptcy does not insulate a debtor from environmental regulatory statutes." *United States v. Hansen*, 262 F.3d 1217, 1238 (11th Cir. 2001); *see also*

6

*Baker & Drake, Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake, Inc.)*, 35 F.3d 1348, 1354 (9th Cir. 1994).

26.    The Supreme Court has recognized these important concepts. *See Midlantic Nat'l Bank v. N.J. Dep't of Env't Prot.*, 474 U.S. 494, 502 (1986). ("Congress has repeatedly expressed its legislative determination that the trustee is not to have *carte blanche* to ignore nonbankruptcy law. Where the Bankruptcy Code has conferred special powers upon the trustee and where there was no common-law limitation on that power, Congress has expressly provided that the efforts of the trustee to marshal and distribute the assets of the estate must yield to governmental interest in public health and safety."); *Texas v. Lowe (In re H.L.S. Energy Co.)*, 151 F.3d 434, 438 (5th Cir. 1998); *see also In re Am. Coastal Energy*, 399 B.R. 805, 810 (Bankr. S.D. Tex. 2009) ("A bankruptcy petition is not a grant of immunity.  Bankrupt debtors are no different from any citizen in that they must comply with state and federal laws.").

27.    It is well-established that anyone who owns or operates property acquired from a debtor must comply with environmental law. No one is entitled to ignore hazards or disregard laws that protect the public and the environment. *See, e.g.*, *Ohio v. Kovacs*, 469 U.S. 274, 285 (1985) ("[A]nyone in possession of [a] site . . . must comply with . . . environmental laws . . . Plainly that person . . . may not maintain a nuisance, pollute the waters . . . [,] or refuse to remove the source of such conditions."); *In re General Motors Corp.*, 407 B.R. 463, 508 (Bankr. S.D.N.Y. 2009) (a free and clear purchaser "would have to comply with its environmental responsibilities starting with the day it got the property, and if the property required remediation as of that time, any such remediation would be the buyer's responsibility"); *cf. In re CMC Heartland Partners*, 966 F.2d 1143 (7th Cir. 1992) (a reorganized debtor that owns property that was contaminated prior to confirmation is liable to EPA as the present owner of the property).

7

28.     A buyer of a debtor's assets is subject to the same compliance obligations as all other owners of property. The Bankruptcy Code does not put the buyer in a privileged position by freeing the buyer from obligations with which all other owners must comply. If a buyer could contend that it is somehow exempt from obligations that apply to all other owners, the public would be placed at risk. In short, a buyer cannot evade environmental compliance obligations - like the Decommissioning Obligations - even those that exist at the outset of its ownership. *See General Motors*, 407 B.R. at 508.

29.     More specifically, Section 363(f) of the Bankruptcy Code, 11 U.S.C. § 363(f), does not allow a buyer to acquire a debtor's property free and clear of the obligation to comply with environmental laws. Rather, Section 363(f) permits property to be sold free and clear of a debtor's "interest in such property" only if at least one of the following five conditions is satisfied:

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

30.     It is clear that Section 363 does not act as a release of obligations to comply with police and regulatory laws and requirements. *See CMC Heartland Partners*, 966 F.2d at 1147 ("a statutory obligation attached to current ownership of the land survives bankruptcy"); *United*

*States v Apex Oil Co.*, 579 F.3d 734, 737 (7th Cir. 2009); *In re Torwico Elec., Inc.*, 8 F.3d 146, 151 (3d Cir. 1993); *Pension Benefit Guar. Corp. v. Oneida Ltd.*, 562 F.3d 154, 157 (2d Cir. 2009); *In re Grumman Olson Indus.*, 445 B.R. 243, 249 (Bankr. S.D.N.Y. 2011); *General Motors*, 407 B.R. at 508.

31.     The Sale Motions seek to transfer estate assets pursuant to Section 363. The United States contends that the requirements of Section 365 must be satisfied before a trustee can assume and assign a Federal contract or lease. Nevertheless, the Sale Motions do not satisfy any of the conditions of Section 363 with respect to the Buyer's obligations to fulfill BLM's regulations concerning the transfer of the Federal leases and compliance with environmental law.

32.     For example, "applicable nonbankruptcy law" (condition 1) does not permit a sale free and clear of an owner's obligations under environmental law or BLM's regulations. Further, the United States does not consent to a transfer free and clear of such obligations (condition 2). Neither environmental compliance obligations nor BLM's regulations are liens (condition 3). And the obligations of lessees, owners, and operators under BLM's regulations and environmental law are not in dispute (condition 4). Finally, the United States cannot be "compelled . . . to accept a money satisfaction" (condition 5) in lieu of a buyer's compliance with BLM's regulations or environmental law. *See In re Mark IV Indus., Inc.*, 438 B.R. 460, 470 (Bankr. S.D.N.Y. 2010), aff'd, 459 B.R. 173, 186 (S.D.N.Y. 2011) (the Bankruptcy Code does not require a governmental agency entitled to an equitable remedy to select a suboptimal remedy of money damages, *citing In re Davis*, 3 F.3d 113, 116 (5th Cir. 1993)); *see also Gouveia v. Tazbir*, 37 F.3d 295, 299 (7th Cir. 1994) (a debtor could not force neighboring landowners to accept money in lieu of equitable relief). Above all, no provision of BLM's regulations or

environmental law allows an owner to force the United States to accept money instead of action to protect the public.

33.     The Debtors are lessees or operators of Federal leases that are subject to BLM enforcement orders. These enforcement orders require responsible parties, including predecessors in the chain of title, to perform Decommissioning Obligations on certain non-performing wells. Under no circumstances should the Sale Motions or Section 363 be used to undermine or upset orders issued pursuant to BLM's police and regulatory authority that are intended to protect human health and the environment. Moreover, the Buyer must not take any action that undermines the Decommissioning Obligations already performed.

34.     Simply put, neither Section 363, nor any other provision of the Bankruptcy Code, places a buyer in a position above the law, particularly when those laws protect public health, safety, and the environment. *See, e.g.*, *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir. 1994) ("[N]o one believes . . . [that] a bankruptcy court enjoys a blanket power to enjoin all future lawsuits against a buyer at a bankruptcy sale [or] . . . immunize such buyer from all state and federal laws that might reduce the value of the assets bought from the bankrupt.").

35.     This Court must not approve the proposed sales unless the language requested by the United States below is added to any Order granting the Sale Motions. In *In re Old Carco LLC (f/k/a Chrysler LLC)*, 551 B.R. 124 (Bankr. S.D.N.Y. 2016), the bankruptcy court indicated that language like that proposed by the United States here "is a phrase of art commonly used and well understood by experienced bankruptcy professionals involved in sales transactions." *Id*. at 129-30. The court noted that the "self-evident" purpose of the language is that "a buyer of property under a 'free and clear' sale order cannot escape the responsibility to remediate a condition that violates safety or similar laws even if the condition pre-existed the sale." *Id*. at 130.

10

### B.   The Trustee or Buyer Must Cure Lease Defaults

36.   While the Sale Motions look to Section 363 to support the proposed sale, the Court should consider whether the Trustee has satisfied the requirements to Section 365 to properly assume and assign the Federal leases. It appears that the Sale Motions ignore Section 365 because the assumption and assignment of a lease pursuant to Section 365 requires the cure of any lease defaults.

37.   When a debtor or trustee assumes an unexpired lease, it does so *cum onere*, with all of the benefits and burdens inherent in the existing contractual framework. *See Richmond Leasing Co. v. Cap. Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

38.   To "insure that the contracting parties receive the full benefit of their bargain[,]" *In re Escarent Entities, L.P.*, 423 F. App'x 462, 465 (5th Cir. 2011), Section 365(b)(1) of the Bankruptcy Code prohibits the assignment and assumption of unexpired leases that are in default unless the party who seeks to assume the contract:

(A)   cures, or provides adequate assurance that the trustee will promptly cure, such default . . .;[3]

(B)   compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C)   provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

---

[3] The remainder of this provision exempts failures to perform nonmonetary obligations from the group of curable breaches, except that "performance at and after the time of assumption" can cure a failure to operate in accordance with a nonresidential property lease.

39.     Here, it appears that some of the wells that the Trustee seeks to transfer relate to Federal leases that have expired because of the Debtors' failure to comply with applicable BLM regulations concerning the operation of wells on Federal land.

40.     Further, the Trustee and the Buyer must not be allowed to alter Federal lease obligations by picking and choosing to transfer only the productive wells and facilities while excluding assumption of Decommissioning Obligations for nonproductive wells and facilities administered under the same Federal lease. This approach is not only impermissible under the applicable regulations, but also as a matter of bankruptcy law. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000) ("Where the debtor assumes an executory contract, it must assume the entire contract, *cum onere*—the [trustee] accepts both the obligations and the benefits of the executory contract"); *see also Bennu Oil & Gas, LLC v. Bluewater Indus., L.P.*, 517 B.R. 756, 759–60 (Bankr. S.D. Tex. 2014) ("[A] [trustee] may not pick and choose those portions that [she] wishes to enforce and reject those that [she] does not deem desirable. That is black letter law engraved in stone."). As currently described in the Sale Motions, it appears highly unlikely that the transaction could obtain the regulatory approvals necessary to transfer the Federal leases.

41.     Finally, the Debtors' outstanding debts, if any, owed to the United States must be paid, and ONRR's audit rights must be preserved. Pursuant to the Federal Oil and Gas Royalty Management Act of 1982, as amended by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1966, 30 U.S.C. §§ 1701 *et. seq.*, the regulations enacted pursuant thereto, terms of the leases and contracts, and other applicable provisions of law, the Debtors are liable for payment of royalties, rents, fees and other obligations, and for the maintenance of records relating to their oil and gas leases for six years unless the Secretary directs otherwise. *Id*. §§ 1712

-13. Correspondingly, the Secretary is required to audit and reconcile oil and gas leases. *Id*. at § 1711. This duty has been delegated to ONRR.

## C. Proposed Language

42. The United States' Limited Objection can be resolved by adding the following language to any order granting the Sale Motions.

> Notwithstanding any provision to the contrary in this Sale Order ("Order"), any sale agreement, or any other document related to the possible sale, nothing shall:
>
> i. release, nullify, preclude, exculpate, or enjoin the enforcement of any police or regulatory power or any liability that any entity would be subject to as the owner, lessor, lessee or operator of property that such entity owns, operates or leases after the date of entry of this Order;
>
> ii. affect the setoff or recoupment rights of any Governmental Unit, as defined in the Code at 11 U.S.C. § 101(27) ("Governmental Unit");
>
> iii. confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);
>
> iv. authorize the assumption, assignment, sale or other transfer of any state or federal (a) grants, (b) grant funds, (c) contracts, (d) rights of way, (e) agreements, (f) awards, (g) task orders, (h) property, (i) intellectual property, (j) patents, (k) leases, (l) certifications, (m) applications, (n) registrations, (o) billing numbers, (p) national provider identifiers, (q) provider transaction access numbers, (r) licenses, (s) permits, (t) covenants, (u) inventory, (v) guarantees, (w) indemnifications, (x) data, (y) records, or (z) any other interests belonging to any Governmental Unit (collectively, "Governmental Interests") without compliance by the Debtors and Buyer(s) with all terms of the Governmental Interests and with all applicable non-bankruptcy law; for the avoidance of doubt, any assignment

          of any Governmental Interest is ineffective unless the required Governmental Unit's consent is acquired in accordance with applicable non-bankruptcy law.

    v.    be interpreted to set cure amounts or to require any Governmental Unit to novate, approve or otherwise consent to the sale, assumption, assignment or other transfer of any Governmental Interests;

    vi.    waive, alter or otherwise limit any Governmental Unit's property rights; or

    vii.    expand the scope of 11 U.S.C. § 525.

Notwithstanding any other provision in this Order or in any sale documents, the United States will retain, and have, the right to audit and/or perform any compliance review and, if appropriate, collect from the Debtor or its successors and assigns including the Buyer, any additional monies that was owed by the Debtor prior to the assumption and assignment of the Governmental Leases without those rights being adversely affected by these bankruptcy proceedings. The Debtor, the Buyer, and their successors and assigns will each individually retain all defenses and/or rights, other than defenses and/or rights arising from the bankruptcy, to challenge any such determination; provided, however, that any such challenge, including any challenge associated with this bankruptcy proceeding, must be raised in the United States' administrative review process leading to a final agency determination by Office of Natural Resources Revenue. The audit and/or compliance review period shall remain open for the full statute of limitations period established by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 (30 U.S.C. §§ 1701, et seq.).

43.    As explained above, this language correctly recognizes the United States' rights to require: (1) consent and adequate cure prior to the assignment of the Federal leases and contracts under section 365 of the Bankruptcy Code; and (2) compliance with financial assurance, Decommissioning Obligations, audit, reporting and other associated obligations of the Federal leases and contracts pursuant to applicable non-bankruptcy law.

**CONCLUSION**

For the reasons stated above, the United States requests that the Sale Motions be denied

unless the proposed language above is included in any Order approving the Sale Motions.

Respectfully submitted,

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

By:  /s/*Steven B. Bass*
STEVEN B. BASS
Assistant United States Attorney
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
(512) 916-5858/Fax (512) 916-5854
Florida State Bar No. 767300
Email Steven.Bass@usdoj.gov

Counsel for the United States of America

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 6, 2026, a copy of the foregoing "Limited Objection of the United States to Chapter 7 Trustee's Motions to Approve Sale of Certain Oil and Gas Leases and Related Property" was served by the Court's electronic mail, and also by U.S. First Class Mail, postage prepaid to the following:

Acacia Operating Company, LLC
P.O. Box 1110
Boerne, TX 78006
*Via U.S. First Class Mail*

Brandon John Tittle
Tittle Law Firm, PLLC
13155 Noel Drive, Suite 900
Dallas, TX 75240
*Via U.S. First Class Mail*

/s/*Steven B. Bass*
STEVEN B. BASS
Assistant United States Attorney