**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Chapter 7 |
| ACACIA OPERATING COMPANY, LLC, | § | |
| | § | Case No. 24-70194-SMR |
| | § | |
| Debtor. | § | |
| | § | |
| IN RE: | § | |
| | § | |
| | § | Chapter 7 |
| ACACIA RESOURCES, LLC, | § | |
| | § | Case No. 24-70195-SMR |
| | § | |
| Debtor. | § | |

<u>**THE STATE OF NEW MEXICO'S MOTION TO LIFT THE AUTOMATIC STAY**</u>
<u>**PURSUANT TO 11 U.S.C. § 362(d)(1)**</u>

---

**This pleading requests relief that may be adverse to your interests.**

**If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held.**

**A timely filed response is necessary for a hearing to be held. Any response must be timely filed with the United States Bankruptcy Clerk, Western District of Texas, 903 San Jacinto Blvd, Ste. 322, Austin, TX 78701. If a timely response is filed, the Court will then set a hearing on the Motion, and you will be provided with notice of the date, time, and place of the hearing. If you do not attend the hearing, the Court may decide that you do not oppose the Motion.**

---

**COMES NOW** the Attorney General of New Mexico on behalf of the State of New Mexico and the Oil Conservation Division ("OCD") of the New Mexico Energy, Minerals and Natural Resources Department (collectively, "New Mexico" or "the State" or "Movant"), and

---

moves the Court to lift the automatic stay pursuant to 11 U.S.C. § 362(d)(1) ("Motion"), showing as follows:

### I.     OVERVIEW

In December last year, the State moved the Court for a determination that the automatic stay does not apply to the claims at issue in the State's Complaint, because they fall within the police and regulatory powers exception to the automatic stay. *The State of New Mexico's Motion to Determine Inapplicability of the Automatic Stay Pursuant to 11 U.S.C. § 362(b)(4) to the State's Action Against the Debtor* (filed Dec. 22, 2025), Doc. 58, *In Re Acacia Operating LLC*; Doc. 62 in *In re Acacia Resources, LLC*) ("Motion to Determine"). Now, and in addition, the State moves the Court for alternative relief for claims in the State's Complaint which may be causes of action that the Trustee could bring on behalf of the Estates under 11 U.S.C. § 544(b)(1) and that may fall outside of the police and regulatory powers exception to the automatic stay.

As shown below, good cause exists for the Court to grant relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

### II.     JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### III.     BACKGROUND

2.     On December 27, 2024, Debtors Acacia Operating Company, LLC, and Acacia Resources, LLC ("Debtors") filed voluntary petitions for relief under Chapter 7 of the Bankruptcy

Code in the United States Bankruptcy Court for the Western District of Texas, Midland Division (the "Court").

3. On December 22, 2025, the State filed its Motion to Determine, seeking a ruling from the Court that the State's case fell within the police and regulatory powers exception of the automatic stay, 11 U.S.C. § 362(b)(4).

4. The Court held a status conference on February 24, 2026, and, in response to a motion filed by the Gilmore Parties,[1] the Court continued the Hearing on the Motion to Determine until March 27, 2026.

5. At the March 27, 2026 Hearing, the Court directed the State to file this Motion. The Court also directed the State and the Trustee to file a 9019 Agreement, governing allocation of potential recovery under the Uniform Voidable Transactions Act ("UVTA") and unjust enrichment causes of action.

6. In an effort to finalize a 9019 Agreement, the State has been in negotiations with the Trustee as to allocation of any monies recovered from the causes of action that may also belong to the Estate but, to date, the Trustee has not responded to the State's latest offer, sent on February 26, 2026. The State followed up on this offer by email on March 27, 2026, and again on April 1, 2026, but has received no response. The State's counsel left a voicemail message for the Trustee's counsel on Friday April 10th. As of filing this motion, the State has received no response to its emails or voicemail.

---

[1] The Gilmore Parties are: Marquis Reed Gilmore, Jr.; Gilmore Oil & Gas, LP; Bluebird Energy Corporation; and Cibolo Energy.

7. Though the Trustee and the State have not yet reached an allocation agreement, the Trustee has consented to the State's pursuit of its state court action, including UVTA and unjust enrichment claims, as explained in the State's Reply to the Gilmore Parties' Objection. *The State of New Mexico's Reply in Support of its Motion to Determine Inapplicability of the Automatic Stay pursuant to 11 U.S.C. § 362(b)(4) to the State's Action Against the Debtor* at 6–8 (Dkt. No. 104 in case number 24-70194, and Dkt. No. 84 in case number 24-70195 ("Reply")).

8. In the event the State and Trustee are unable to reach a 9019 Agreement at this time, the Court should nevertheless grant this Motion because the State may pursue all of its claims in its state-court action under the standard set forth in *Louisiana World Exposition v. Federal Insurance Co.*, 858 F.2d 233 (5th Cir. 1988).

9. Under the Bankruptcy Code, it is the Trustee's duty to "collect and reduce to money the property of the estate . . . and close such estate as expeditiously as is compatible with the best interest of parties in interest." 11 U.S.C. § 704(a)(1); *see also La. World Exposition*, 858 F.2d at 246 & n.12.

10. For the State to proceed with these claims, the Trustee must be unable or unwilling to bring the causes of action, the claims must be "colorable," in the "best interest of the estate," and "necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings." *In re Tidewater Landfill LLC*, 674 B.R. 218, 224–25 (Bankr. E.D. La. July 16, 2025) (citing a case that draws on *La. World Exposition*); *see also* Reply ¶¶ 12–18 at 6–7.

11. In the current case, the Trustee is unable to fulfill his duty under 11 U.S.C. § 704 to bring these causes of action because the estate has little-to-no money with which to litigate. As more fully set out in the State's Reply, which is incorporated herein by reference, these claims are

colorable and would be very beneficial to the bankruptcy Estate because these causes of action are the only significant source of income for the Estate.

12. Therefore, if the stay is lifted, the State will agree that any financial recovery allocated to the UVTA and unjust enrichment causes of action will be paid to the bankruptcy Estate. The State reserves the right to file administrative claims in the bankruptcy for any amounts expended in successfully litigating the Estate claims, in addition to other claims available to the State.

13. The Court continued the Hearing on the Motion to Determine until May 18, 2026.

## IV. RELIEF REQUESTED

14. The State respectfully requests entry of an order, pursuant to Section 362(d)(1) of the Bankruptcy Code and Bankruptcy Rule 4001(a)(1), granting relief from the automatic stay to allow the State to move forward with the state court litigation and such further relief as is appropriate.

## V. BASIS FOR RELIEF

15. The automatic stay provided for under 11 U.S.C. § 362(a) is a fundamental principal of bankruptcy law that provides debtors a breathing spell from creditors and collection efforts.[2] At the same time, the automatic stay protects creditors because it stops any acts by creditors to be the first to collect on amounts owed; instead, through the bankruptcy, an orderly liquidation is put in place so that creditors are treated equally.[3]

---

[2] H.R. REP. NO. 595, 95th Cong., 2d Sess. 340 (**1978**), *reprinted in* **1978 U.S.C.C.A.N. 5963**, 6296-97; S. REP. NO. 989, 95th Cong., 2d Sess. 54-55 (**1978**), *reprinted in* **1978 U.S.C.C.A.N.** 5787, 5840-41.

[3] H.R. REP. NO. 595, 95th Cong., 2d Sess. 340 (**1978**), *reprinted in* **1978 U.S.C.C.A.N. 5963**, 6297; S. REP. NO. 989, 95th Cong., 2d Sess. 49 (**1978**), *reprinted in* **1978 U.S.C.C.A.N.** 5787, 5835.

16. However beneficial, the automatic stay is not immutable. Congress provided twenty-nine exceptions to the automatic stay, 11 U.S.C. § 362(b)(1)–(29), and provided for the lifting of the automatic stay, 11 U.S.C. § 362(d).

17. To lift the stay, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief" from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

18. Though "cause" is not defined in the Bankruptcy Code, whether "cause" exists is determined on a "case-by-case' basis. *In re JCP Props., Ltd.*, 540 B.R. 596, 613 (Bankr. S.D. Tex. 2015).

19. The Fifth Circuit has "noted that this lack of definition affords flexibility to the bankruptcy courts" in determining what constitutes cause. *In re Mirant Corp.*, 440 F.3d 238, 253 (5th Cir. 2006) (internal quotation marks and citation omitted).

20. Courts should "be guided by considerations that under the law make for ascertainment of what is just to the claimants, the Debtor, and the estate." *In re Gramercy Ct., Ltd.*, No. 07-80177-G3-11, 2007 WL 2126493, at *6 (Bankr. S.D. Tex. July 19, 2007) (citing *Foust v. Munson S.S. Lines*, 299 U.S. 77, 83 (1936)). For example, "[a]llowing a matter to proceed in another forum may constitute cause." *In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (S.D. Tex. 2014); *see also Swartz v. Crippen*, 185 F.2d 964, 965 (5th Cir. 1950) (collecting cases); *In re Murray Indus., Inc.*, 121 B.R. 635, 636 (Bankr. M.D. Fla. 1990) (noting that "[a]llowing a matter to proceed to another forum may constitute 'cause' to lift the stay" and reasoning that allowing the state case to proceed would avoid waste of judicial resources).

21.     In fact, "[i]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." *In re Murray Indus., Inc*., 121 B.R. at 636 (citing Senate Rep. No. 989, 95th Cong., 2d Sess., 50, *Reprinted in* (1978) U.S. Code Cong. & Ad. News 5787, 5836)).

22.     In determining whether to lift the automatic stay to allow litigation to proceed in state court, courts have examined the following factors:

> 1) whether the relief will result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves Debtor as a fiduciary; 4) whether a specialized tribunal has been established to hear the particular cause of action; 5) whether the debtor's insurer has assumed full responsibility; 6) whether the action primarily involves third parties; 7) whether litigation in the other forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether movant's success would result in a judicial lien avoidable by the debtor; 10) interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the proceedings have progressed to the point that parties are ready for trial; and 12) impact of the stay on the parties and the balance of harm.

*In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014).

23.     Related to the last factor, courts apply a hardship balancing test when considering a motion to modify the automatic stay. *See, e.g.*, *Mooney v. Gill*, 310 B.R. 543, 546–47 (N.D. Tex. 2002) ("The bankruptcy court must balance the hardships of the parties and base a decision on whether to modify the automatic stay on the degree of hardship involved and the goals of the Bankruptcy Code.") (citing *In re Cardinal Industries, Inc*., 116 B.R. 964, 983 (Bankr. S.D. Ohio 1990)).

24. Courts are accorded flexibility in determining whether cause exists to lift the automatic stay. *In re Irish Bank Resol. Corp.*, No. BR 13-12159-CSS, 2019 WL 4740249, at *6 (D. Del. Sept. 27, 2019) (citing *In re Mirant Corp.*, 440 F.3d 238, 253) (5th Cir. 2006).

25. Importantly, "cause" may be established by a single factor such as a lack of interference with the pending bankruptcy case. *In re Irish Bank Resol. Corp.*, 2019 WL 4740249, at *6; *see also In re Xenon*, 510 B.R. at 112 (observing that "[n]ot all factors may be relevant to each case," and that "the decision to lift the stay may be upheld on judicial economy grounds alone").

26. Here, several of the most relevant factors weigh in favor of lifting the stay so that the State court action may proceed:

27. *First*, the State court case will not interfere with the bankruptcy proceedings but will help in their resolution. *See id.* One reason for the automatic stay is to prevent the proverbial creditor-race to the courthouse and, instead, to preserve and collect the property of the estate to be sold and have the proceeds equitably divided amongst creditors. These State proceedings will only help the bankruptcy proceedings because these are causes of action that the Trustee is under a duty to bring, but, due to the lack of funds in the estates, he cannot. Allowing the State to bring these causes of action will allow any recovery allocated to the causes of action belonging to the estate to be paid back into the estate for distribution pursuant to the Bankruptcy Code.

28. Further, determining who is responsible for the costs of plugging which wells will help establish the value of the Debtors' assets, as will be required for liquidation of the estate. Courts regularly grant relief from the stay under such circumstances. *See, e.g.*, *In re Edison Mission Energy*, No. 12-49219, 2013 WL 6504710, at *5 ("Allowing the [regulatory] Proceeding to

continue will require [the debtor's] compliance with environmental regulations that will still be in effect when [the debtor] emerges from bankruptcy," such that "[r]equiring [the debtor] to take immediate action to address alleged environmental violations will be beneficial to the Debtors' estates and their successors, including the prospective purchasers."); *In re Kish*, 41 B.R. 620 (Bankr. E.D. Mich. 1983) (allowing a citizen suit under a state environmental statute to proceed against a chapter 11 debtor, notwithstanding the automatic stay); *In re Fowler*, 259 B.R. 856, 861 (Bankr. E.D. Tex. 2001) ("This Court, like all bankruptcy courts, routinely lifts the stay to allow tort suits to go forward in state court to determine the liability, if any, of the Debtor.").

29.     The State's enforcement of its police and regulatory powers under which the State seeks injunctive, declaratory, and equitable relief, in addition to civil penalties, does not compete with the claims of other, non-sovereign creditors; instead, the State's action has the potential to return assets that were fraudulently transferred away from the Debtors back to the estates—this will not prejudice the interests of the other creditors but potentially benefit them.

30.     *Second*, judicial economy is better served, and an economic resolution is more quickly reached, by allowing the state-court proceeding to continue because a number of the causes of action in the state-court litigation are police and regulatory causes of action that, under 28 U.S.C. § 1452, cannot be removed to this court. It would be completely inefficient to litigate some causes of action in this Court and other causes of action—based upon the same facts and circumstances—in the state court. Splitting the litigation between courts also invites the possibility of different decisions on the same facts and circumstances which, in turn, could cause further appellate litigation.

31.     Likewise, splitting the litigation between courts is not practical because the state-court Complaint is also squarely directed against non-debtor "third party" defendants, but the nature of the claims are so intertwined that the claims against those non-debtor third parties cannot be brought independently from claims involving the Debtors.

32.     Assuming *arguendo* that the claims could be split, litigating in two different courts in two different states is not at all cost-effective because it requires attorneys and witnesses to travel to two different courts in two different states to litigate claims based on the same facts and circumstances. The real property, the regulating agencies, and the Debtors' business are all located in New Mexico, and all of the causes of action are based on New Mexico law. Allowing the New Mexico state court to decide the State's case will therefore reduce the costs of litigation by centralizing the majority of the evidence and witnesses in the case.

33.     *Third*, the litigation of these causes of action only in the New Mexico state court will result in a complete resolution of the outstanding issues under New Mexico law for the State and the Trustee. In fact, the State is likely to prevail in the proposed state-court action. The Complaint, which is incorporated by reference, provides abundant, publicly available evidence documenting the defendants' wrongdoing. The State is confident that additional evidence will be forthcoming through discovery. The facts described fit squarely within the statutory frameworks of the New Mexico Oil and Gas Act, the New Mexico UVTA, and the New Mexico Fraud Against Taxpayers Act, and New Mexico caselaw on unjust enrichment, civil conspiracy, and veil-piercing. As such, State court is the appropriate forum for the adjudication of these state-law causes of action.

---

34.     *Fourth*, the hardship balancing test weighs in favor of allowing the State's lawsuit to proceed. The Debtors and their estates will not be harmed by the proposed state-court lawsuit—in fact, they may benefit from resolution of the UVTA and unjust enrichment claims. On the other hand, the State will suffer significant ongoing harm from application of the stay. The State is currently obligated to plug many of the Debtors' wells and will be obligated to plug many more in the future. While the State can file administrative claims for any plugging performed, without money in the estate, no administrative claims can be paid, and the State will be required to pay for plugging the Debtor's wells and remediating the soil.

35.     By allowing the state-court litigation to move forward, the New Mexico court will be able to decide whose responsibility it is, or should be, to plug these wells and remediate the soil.

36.     Furthermore, the State has a significant interest in deterring other operators from using tactics similar to those employed by the defendants—including fraud—to perpetuate schemes that allow them to pocket oil and gas production revenues while avoiding cleanup costs. The State will be harmed if irresponsible operators believe they can use bankruptcy to evade State action to deter such schemes.

37.     Allowing the State's lawsuit to proceed would not frustrate any of the core goals of the Bankruptcy Code generally, and the automatic stay specifically, and would only serve to enhance the bankruptcy estate.

38.     For all the foregoing reasons, the Court should thus find cause to lift the automatic stay under 11 U.S.C. § 362(d)(1).

## VI.     PROCEDURE

39.     No previous request for the relief sought herein has been made to this or any other Court.

## VII.     CONCLUSION

WHEREFORE, the State prays that the Court enter an order granting the State's Motion to Lift Stay as to any causes of action in the State's Complaint that are not excepted from the automatic stay pursuant to 11 U.S. C. § 362(b)(4), and that there are no other barriers to the State's pursuit of its pending state-court proceeding, and for any other relief to which the Court finds the State entitled.

DATED: April 13, 2026,                  Respectfully submitted,

*/s/ Abigail Rushing Ryan*
Abigail Rushing Ryan
State TX Bar No. 24035956
*Bankruptcy Counsel*
National Association of Attorneys General
1850 M Street NW, 12th Floor
Washington, DC 20036
aryan@naag.org

*/s/ Esther C. Jamison*
Raúl Torrez
*Attorney General*
William G. Grantham
Esther C. Jamison
*Assistant Attorneys General*
Environment Protection Division
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501
ejamison@nmdoj.gov

ATTORNEYS FOR THE STATE OF NEW MEXICO AND THE OIL CONSERVATION DIVISION OF THE NEW MEXICO ENERGY, MINERALS, AND NATURAL RESOURCES DEPARTMENT

## CERTIFICATE OF SERVICE

I certify that on April 13, 2026, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Western District of Texas on the parties below via email.

*/s/ Abigail Rushing Ryan*
Abigail Rushing Ryan
Bankruptcy Counsel

**Debtor**
Brandon John Tittle
Tittle Law Firm, PLLC
13155 Noel Drive, Suite 900
Dallas, TX 75240
btittle@tittlelawgroup.com

**Chapter 7 Trustee**
Herbert C. Shelton, II
Hayward PLLC
7600 Burnet Rd., Suite 530
Austin, TX 78757
cshelton@haywardfirm.com

**Midland Central Appraisal District**
Julie Ann Parsons
McCreary Veselka Bragg & Allen, P.C.
PO Box 1269 Round Rock, TX 78680
jparsons@mcbalaw.com

**Midland County**
Perdue, Brandon, Fielder, Collins & Mott, L.L.P.
PO Box 817
Lubbock, TX 79408
lmbkr@pbfcm.com

**New Mexico State Land Office**
Lynn Hamilton Butler
Husch Blackwell
111 Congress Avenue, Suite 1400
Austin, TX 78701
lynn.butler@huschblackwell.com

**New Mexico Oil Conversation Division**
Jessee K. Tremaine and Michael Hall
Assistant General Counsels
Oil Conservation Division
Energy, Minerals and Natural Resources Department
1220 South S. Francis Dr.
Santa Fe, NM 87505
jessek.tremaine@emnrd.nm.gov
*and*
Robert L. Soza, Jr.
Reagan M. Marble
Brandon Durrett
Robert M. Biedrzycki
1900 Broadway, Suite 1200
San Antonio, TX 78215
Email: rsoza@jw.com
Email: rmarble@jw.com
Email: bdurrett@jw.com
Email: bbiedrzycki@jw.com

**Marquis Reed Gilmore Jr, Gilmore Oil & Gas, LP, Bluebird Energy Corporation, Cibolo Energy**

Jennifer F. Wertz
Beau H. Butler
Jackson Walker, LLP
100 Congress Avenue, Suite 1100
Austin, TX 78701
Email: jwertz@jw.com
Email: bbutler@jw.com