**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 7 |
| ACACIA OPERATING COMPANY, LLC | § | Case No. 24-70194-SMR |
| Debtor. | § | |
| | § | |

**GILMORE PARTIES' RESPONSE TO**
**THE STATE OF NEW MEXICO'S MOTION TO LIFT THE AUTOMATIC STAY**
**PURSUANT TO 11 U.S.C. § 362(D)(1)**

Marquis Reed Gilmore Jr., Gilmore Oil & Gas, LP, Bluebird Energy Corporation, and Cibolo Energy (the "Gilmore Parties") respectfully submit this Objection and Response to the State of New Mexico's Motion to Lift the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) [Docket No. 141] (the "Lift Stay Motion").

**I. INTRODUCTION**

1.     The Court should require the State of New Mexico (the "State") to dismiss the lawsuit it filed in violation of the stay. The Court should not countenance the flagrant violation of both the stay and this Court's directive.

2.     The Lift Stay Motion should be denied because:

(i)     the State has not established "cause" under the governing twelve-factor test;

(ii)    granting stay relief would interfere with the orderly administration of the bankruptcy estate;

(iii)   the State's UVTA and unjust enrichment claims are estate causes of action over which this Court has exclusive jurisdiction;

(iv)    the State lacks derivative standing to prosecute estate claims;

(v)     the State's monetary claims against the Debtor must be liquidated and administered in this Court; and

(vi)    the hardship balance is in favor of the Gilmore Parties, who are named defendants in the State's complaint and would be significantly prejudiced

by the improper exportation of core bankruptcy matters to New Mexico state court.

3.      The procedural posture of this Motion confirms the State's overreach and violation of the stay. At the March 27, 2026, hearing, this Court identified claim ownership as a critical threshold matter that must be resolved before proceeding, because the face of the Complaint shows New Mexico blatantly pursuing estate claims. The Court further directed the State to file a motion to lift stay for claims falling outside the police and regulatory powers exception of section 362(b)(4) and directed the State and the Trustee to file a Rule 9019 Agreement governing the allocation of any recovery on estate causes of action. The Court emphasized that a Chapter 7 Trustee cannot enter into agreements authorizing other parties to pursue claims belonging to the bankruptcy estate without proper notice to creditors and parties in interest, and without approval by the Court. To date, no such 9019 Agreement has been filed, and the Trustee apparently has not responded to the State's allocation proposal. In fact, on April 20, 2026, the Trustee filed a Notice Regarding Non-Settlement advising that the Trustee and the State of New Mexico have not reached an agreement and that no settlement agreement exists for Court approval. Despite these unresolved threshold issues, the State now seeks blanket stay relief to prosecute all of its claims—including UVTA, unjust enrichment, and veil-piercing claims that are plainly property of the bankruptcy estate—in New Mexico state court.

4.      Finally, the State's pattern of conduct—filing a state-court action in violation of the automatic stay, disregarding this Court's directive that claim ownership and Rule 9019 allocation be resolved before any stay relief, and reserving an unauthorized administrative-expense claim against the estate—supports an award of the Gilmore Parties' reasonable attorneys' fees and costs under 11 U.S.C. § 105(a), 28 U.S.C. § 1927, Federal Rule of Bankruptcy Procedure 9011, and this Court's inherent authority.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

5.      On December 27, 2024, Debtors Acacia Operating Company, LLC, and Acacia Resources, LLC (collectively "Debtor" or "Acacia") filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code.

6.      On December 22, 2025, the State filed its Motion to Determine Inapplicability of the Automatic Stay Pursuant to 11 U.S.C. § 362(b)(4) (the "Motion to Determine"), seeking a ruling that its proposed state-court action fell within the police and regulatory powers exception to the automatic stay.

7.      The State's proposed complaint names the Gilmore Parties as defendants across twelve counts, including UVTA avoidance claims (Counts II and III), Fraud Against Taxpayers Act ("FATA") claims (Counts IV and V), unjust enrichment (Count VI), civil conspiracy (Counts VII and VIII), and veil-piercing (Counts IX through XII). Among other relief, the State seeks a declaration that the transfer of 87 gas wells from Acacia to Solis Partners is "voidable or fraudulent" and seeks the return of "any positive-value assets" to Acacia's estate.

8.      The Gilmore Parties timely filed their Objection to the Motion to Determine on February 20, 2026, arguing that the State's claims are (i) pecuniary in nature, (ii) overlap with estate causes of action belonging exclusively to the Trustee, and (iii) would interfere with the orderly administration of this Chapter 7 case.

9.      At the February 24, 2026, hearing, this Court continued the matter to March 27, 2026. At the March 27, 2026, hearing, the Court made clear that claim ownership is the threshold issue that must be resolved before determining stay relief. The Court emphasized that determining who owns and has the right to pursue the claims is a preliminary matter that falls squarely within its purview—not the state court's. The Court directed the State to file a motion to lift stay for

3

claims falling outside § 362(b)(4) and further directed the State and Trustee to file a Rule 9019 Agreement.

10. On April 13, 2026, without a 9019 Agreement and without the Trustee's response to the State's allocation proposal, the State filed the instant Lift Stay Motion seeking blanket relief to pursue *all* claims in New Mexico.

### III. LEGAL ARGUMENT

**A. The Gilmore Parties Have Standing to Object.**

11. As an initial matter, the Gilmore Parties have standing to object to the Lift Stay Motion. The State's prior attempts to challenge the Gilmore Parties' standing should be rejected.

12. First, the Gilmore Parties are named defendants in the State's complaint. Each of the Gilmore Parties is named as a defendant across multiple counts, including veil-piercing, civil conspiracy, fraudulent transfer avoidance, and unjust enrichment. A party directly hauled into a parallel forum on claims intertwined with core bankruptcy matters is a party-in-interest with a concrete stake in a stay determination that would export those claims from this Court. *See Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 278–79 (2024) (party in interest includes any entity "directly and adversely affected" by the proceedings).

13. Second, Cibolo Energy is a scheduled secured creditor with a multi-million-dollar claim. A creditor with a direct pecuniary stake is a party in interest with the right to be heard on issues that materially affect claim allowance, estate recoveries, and priorities. *See Kaiser Gypsum*, 602 U.S. at 278–79. The State's purported reservation of rights to assert an administrative claim for fees (which if allowed would of course dilute other creditors' recoveries) demonstrates that the instant matter materially impacts claim allowance, estate recoveries, and priorities.

14. The State's argument that Cibolo has forfeited its charter under Texas law and therefore cannot be heard is now moot. Cibolo Energy Resources, LLC was officially reinstated

to active status by the Texas Secretary of State on April 6, 2026. Cibolo has satisfied all franchise tax requirements, and its reinstatement was approved and effective as of April 6, 2026.[1] The State's standing challenge is without merit, and Cibolo—as a scheduled secured creditor with a multi-million-dollar claim—has standing to object to the Lift Stay Motion.

15.     Third, Mr. Gilmore's standing does not turn on speculative surplus projections. Mr. Gilmore is an individually named defendant subject to asserted liability, giving him a direct and concrete stake in the scope of any stay carve-out determining forum and timing. *See Kaiser Gypsum*, 602 U.S. at 278–79; *In re Davidson*, 596 B.R. 841, 846–47 (Bankr. N.D. Miss. 2019).

**B.     The State Has Not Established "Cause" Under the Twelve-Factor Test.**

16.     Section 362(d)(1) provides that a court "shall grant relief" from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). Though "cause" is not defined in the Bankruptcy Code, courts in the Fifth Circuit apply the following twelve factors in determining whether to lift the stay to allow litigation to proceed in state court:

- whether the relief will result in a partial or complete resolution of the issues;
- lack of any connection with or interference with the bankruptcy case;
- whether the other proceeding involves the Debtor as a fiduciary;
- whether a specialized tribunal has been established to hear the cause of action;
- whether the debtor's insurer has assumed full responsibility;
- whether the action primarily involves third parties;
- whether litigation in the other forum would prejudice the interests of other creditors;
- whether the judgment claim arising from the other action is subject to equitable subordination;
- whether movant's success would result in a judicial lien avoidable by the debtor;
- interests of judicial economy and the expeditious and economical resolution of litigation;

---

[1] The undersigned counsel for the Gilmore Parties has so informed counsel for the State.

- whether the proceedings have progressed to the point that parties are ready for trial; and

- impact of the stay on the parties and the balance of harm. *In re Xenon Anesthesia of Tex.*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014).

17. Several of the most relevant factors weigh against granting stay relief here:

18. **The State-Court Proceeding Will Interfere with the Bankruptcy Case**. The State's proposed action seeks relief that directly implicates the administration of the bankruptcy estate. The State seeks to avoid the transfer of 87 wells and return "positive-value assets" to the estate, to pierce the corporate veil to make assets available to satisfy obligations administered through the Acacia estates, and to fix monetary liabilities against the Debtor. These claims directly affect the administration and distribution of estate assets. Permitting the New Mexico court to adjudicate them would create the chaos and inconsistency that centralized bankruptcy jurisdiction is designed to prevent.

19. **Litigation in State Court Would Prejudice the Interests of Other Creditors.** The State's UVTA and unjust enrichment claims, by the State's own admission, seek estate-recovery relief—assets that should return to the estate for the benefit of all creditors. Allowing the State to prosecute these claims in New Mexico court would permit the State to leapfrog the orderly claims process by seizing control of estate causes of action in state court, prejudicing the interests of other creditors.

20. **New Mexico's Action Centers on Debtor Actions and Does Not Primarily Involve Third Parties.** The Debtor is a necessary party to New Mexico's Complaint and without the estate's involvement, most of New Mexico's claims fall away. The Complaint does not primarily involve third parties. Count 1 seeks civil penalties directly against the Debtor. Count 10 asserts a piercing the corporate veil/alter ego claim, which is a derivative claim and cannot stand independent of the Debtor. *See Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1153–54 (5th Cir.

6

1987).  Counts 2 and 3 identify the Debtor as the required debtor-transferor party under the UVTA. The Debtor is a necessary party; these claims cannot be prosecuted with it or the Trustee.  Count 5 assert FATA False Claims for acts alleged to have been done by various individual defendants, but those acts were done on behalf of the Debtor as the transferee seeking OCB approval so those claims also cannot proceed without the Debtor.  Count 7 and 8 assert civil conspiracy theories which on their face involve the Debtor and depend on the Debtor's participation; they cannot be maintained without the Debtor.

21.     **Judicial Economy Favors Centralization in this Court.** The State's complaint names seventeen defendants, including two entities in Chapter 7 before this Court and entities that were debtors in the related Remnant bankruptcy, which also was before this Court. The factual predicates arise from transactions that occurred in, were approved by, or were the subject of proceedings before this Court or orders entered by this Court.

22.     Keeping the dispute here, where it belongs, avoids duplicative litigation and the risk of inconsistent judgments. The Remnant Sale Order contains express provisions preserving the State's regulatory claims and addressing environmental obligations, and the interpretation of that order is a core function of this Court, not the New Mexico court. *See* 28 U.S.C. § 157(b)(2)(N).

23.     **The Balance of Harm Weighs Against Granting Stay Relief**. As named defendants in the State Court Litigation, the Gilmore Parties would be forced to defend in a remote forum against claims that directly affect estate administration and their rights as parties in interest. The Gilmore Parties' defenses are rooted in bankruptcy law—they intend to raise defenses based on the terms of the Remnant sale order, the preclusive effect of this Court's prior orders, the estate's exclusive standing to assert avoidance claims, and the discharge or satisfaction of claims

7

in the Remnant bankruptcy. A state court lacking familiarity with, and jurisdiction over, these proceedings cannot properly adjudicate those defenses.

24.     **The State Court Proceedings Have Not Progressed to Trial Readiness**. The State filed its complaint in New Mexico state court on December 23, 2025, immediately placing it in abeyance. No defendant has been required to answer. No discovery has been taken. No dispositive motions have been filed. As the State admits, the proceedings are in their most preliminary stages.

**C.     The UVTA and Unjust Enrichment Claims are Estate Causes of Action Over Which This Court Has Exclusive Jurisdiction.**

25.     The State's UVTA claims (Counts II and III) present the most significant jurisdictional problem with the Lift Stay Motion because these claims do not belong to the State at all—they belong exclusively to the Trustee. These claims seek to avoid the transfer of 87 gas wells from Acacia to Solis Partners as actually and constructively fraudulent. The State expressly seeks "avoidance of the transfer so that any positive-value assets may be transferred back to Acacia's estate."

26.     Under black letter bankruptcy law, fraudulent transfer claims relating to property of a bankruptcy estate belong exclusively to the estate and may only be prosecuted by the trustee. *See* 11 U.S.C. §§ 544, 548; *In re Ozark Rest. Equip. Co.*, 816 F.2d 1222, 1225 (8th Cir. 1987); *In re Racing Servs., Inc.*, 540 F.3d 892, 898 (8th Cir. 2008). The trustee's avoiding powers under Section 544(b) allow the trustee to "avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor," meaning that while state law provides the substantive basis for the claim, it is the trustee who has standing to prosecute it once the bankruptcy case is commenced. 11 U.S.C. § 544(b)(1).

27.     Avoidance actions under Sections 544 and 548 are at the core of federal bankruptcy power. These claims are "core proceedings" over which the bankruptcy court exercises jurisdiction under 28 U.S.C. § 157(b)(2)(H). The State cannot unilaterally divest this Court of its jurisdiction over these estate causes of action by styling them as state-law UVTA claims and filing them in state court. *See Colvin v. Amegy Mortg. Co., L.L.C.*, 507 B.R. 169, 181–82 (W.D. Tex. 2014) (avoidance is core); *WRT Creditors Liquidation Tr. v. CIBC Oppenheimer Corp.*, 75 F. Supp. 2d 596, 607–10 (S.D. Tex. 1999) (claims allowance and fraudulent transfer proceedings are core).

28.     Moreover, the State's claims seeking to avoid the transfer of 87 wells and return value "to Acacia's estate," to enjoin the assignment of the letter of credit that Acacia scheduled as estate property, and to pierce the veil to make assets available to satisfy obligations administered through the Acacia estates require the state court to adjudicate rights in property of the estate. For these claims, stay relief is irrelevant because even if the stay were lifted, the state court would lack subject matter jurisdiction under 28 U.S.C. § 1334(e)(1). These claims must proceed as adversary proceedings in the bankruptcy court.

**D.     The State Lacks Derivative Standing to Prosecute Estate Claims.**

29.     In its prior briefing, the State requested that this Court grant the State derivative standing to prosecute UVTA and unjust enrichment claims that the State acknowledged the Trustee "could" bring under § 544. This request must be denied for several reasons.

30.     First, derivative standing is an extraordinary remedy subject to heightened scrutiny in Chapter 7. The State's original Motion sought only a § 362(b)(4) determination; derivative standing requires a noticed request and separate adjudication—it cannot be raised for the first time in reply or embedded in a motion for stay relief. *See Louisiana World Exposition v. Fed. Ins. Co.*, 832 F.2d 1391, 1397 (5th Cir. 1987) (derivative standing requires colorable claim, unjustified refusal, and court leave); *In re Enron Corp.*, 319 B.R. 128, 131–33 (Bankr. S.D.N.Y. 2004).

9

31.     Second, the Trustee did not consent to cede estate causes of action. The Trustee's Limited Objection stated only non-opposition to the State's "primary request" for a police-power carve-out, while expressly reserving "all rights of the Trustee to assert ownership of, or the exclusive right to pursue, such causes of action." Non-opposition to a regulatory carve-out is categorically different from consent to derivative standing. *See In re Wilson*, 527 B.R. 253, 255–57 (Bankr. N.D. Tex. 2015) (in Chapter 7, avoidance actions "belong to the bankruptcy estate" and the trustee has "exclusive standing").

32.     Third, the State has offered no evidence on any substantive predicate—no showing that the Trustee has unjustifiably refused to act, no cost-benefit analysis, and no proposed protocols to ensure recoveries inure to the estate. In Chapter 7, where an independent trustee is vested with exclusive authority over estate causes of action, courts apply a heightened standard before permitting creditors to usurp that role. *See In re Dominion Grp., LLC*, No. 19-12366, 2023 WL 4753620, at *9 (Bankr. E.D. La. July 24, 2023) (cautioning against allowing creditors to "hijack" Chapter 7 avoidance actions).

**E.     The Appropriate Resolution is a Narrowly Tailored Order Outlining Which Claims Proceed Where.**

33.     The Gilmore Parties acknowledge that certain of the State's claims—particularly prospective injunctive relief to compel plugging and remediation under the Oil and Gas Act—may fall within § 362(b)(4). The Fifth Circuit has adopted the pecuniary purpose and public policy tests to evaluate this exception. *See In re Halo Wireless, Inc.*, 684 F.3d 581, 588 (5th Cir. 2012). Courts consistently hold that while government may liquidate fines and penalties and obtain injunctive relief, it may not enforce money judgments outside the bankruptcy process. *See In re Commonwealth Oil Ref. Co.*, 805 F.2d 1175, 1182–88 (5th Cir. 1986). Indeed, at the March 27, 2026 hearing, this Court indicated that the police and regulatory powers exception does not apply

10

to certain of the State's claims as currently pled because of the claim ownership issue. The Court further indicated that regardless of the standing determination, the appropriate result would be to grant the motion in part and deny it in part—confirming that blanket stay relief is not warranted.

34. The appropriate resolution is a three-part framework: (1) police-power claims for prospective injunctive relief proceed in state court under § 362(b)(4); (2) monetary and estate-recovery claims are resolved in the bankruptcy court; and (3) claims against non-debtor parties proceed in state court without any stay issue. This framework is consistent with the caselaw, respects this Court's exclusive jurisdiction over estate property, and provides for efficient resolution of the interrelated claims.

35. Specifically, the Court should limit any stay relief to: (a) Count I injunctive relief (plugging/remediation, revocation of operator registrations, and injunctions against Individual Defendants operating in New Mexico); and (b) claims against non-debtor defendants where no Acacia entity is named. The Court should deny stay relief as to: (a) Counts II and III (UVTA claims), which are estate causes of action; (b) Count V monetary components (FATA claims seeking civil penalties against Acacia); (c) Counts VII and VIII monetary damages for civil conspiracy; (d) Count X veil-piercing claims against Acacia Companies; and (e) all claims seeking monetary judgments against the Debtor, including reimbursement, indemnification, civil penalties, and treble damages.

**F.      The Absence of a 9019 Agreement Precludes Stay Relief for Estate Claims.**

36. At the March 27, 2026, hearing, this Court directed the State and the Trustee to file a Rule 9019 Agreement governing the allocation of potential recovery under the UVTA and unjust enrichment causes of action. This Court correctly recognized that a Chapter 7 Trustee cannot, as part of his fiduciary duties, enter into agreements authorizing other parties to pursue claims belonging to the bankruptcy estate without proper notice to creditors and parties in interest, and

without acknowledgment by this Court. The Court further observed that resolving stay issues before determining claim ownership and allocation was equivalent to putting the proverbial cart before the horse, and thus counter to judicial efficiency.

37. To date, no 9019 Agreement has been filed. The State acknowledges that the Trustee "has not responded to the State's latest offer" and that the State has "received no response" despite multiple follow-up communications. The Court made clear at the March 27, 2026, hearing that it (and the parties) needs to understand how the claims will be pursued, who will pursue them, and how any recovery will be allocated between the State and the estate before ruling on stay relief. Until the threshold issue of claim ownership and allocation is resolved through a properly noticed Rule 9019 motion, it would be premature and prejudicial to grant the State blanket leave to pursue overlapping claims in state court.

**G.     The State's Reservation of Administrative Claims for Litigation Costs Is an Improper Attempt to Circumvent the Fee Application and Application to Employ Processes.**

38. In its Lift Stay Motion, the State makes a telling confession: "The State reserves the right to file administrative claims in the bankruptcy for any amounts expended in successfully litigating the Estate claims, in addition to other claims available to the State." This statement reveals the State's true intention—to pursue what it characterizes as "Estate claims" in state court, expend funds litigating those claims, and then seek reimbursement of its fees and litigation costs as an administrative expense against the bankruptcy estate. This reservation is improper because it represents an attempt to bypass both the fee application process and the application to employ process mandated by the Bankruptcy Code; it subverts the claim allowance and priority scheme of the Bankruptcy Code.

39. The Bankruptcy Code establishes procedural frameworks that the State's reservation of rights would circumvent entirely. Under Section 503(b)(1)(A), administrative

12

expenses include "the actual, necessary costs and expenses of preserving the estate," and courts have consistently held that for litigation costs to qualify, the services must have been rendered to and for the benefit of the estate and must have been necessary to its preservation or administration. *See In re Flagstaff Foodservice Corp.*, 739 F.2d 73, 76 (2d Cir. 1984). Critically, these costs must be incurred by or at the direction of the trustee—not by a third party unilaterally pursuing claims it believes belong to the estate. Similarly, section 327(a) provides that a trustee "with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons" to "represent or assist the trustee in carrying out the trustee's duties." 11 U.S.C. § 327(a). The State has sought—and the Court has granted—no such approval.

40. Both processes serve critical gatekeeping functions that cannot be bypassed. Under 11 U.S.C. § 503(a), a request for payment of an administrative expense must be filed as a formal request, and Bankruptcy Rule 2016(a) requires any entity seeking compensation to file "an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."

41. Likewise, Bankruptcy Rule 2014(a) requires a professional seeking employment to file an application setting forth "the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." These parallel requirements exist to ensure transparency, protect against conflicts of interest, allow parties in interest to review and object, and require the court to scrutinize whether the services were actual, necessary, and beneficial to the estate before

administrative expense claims erode the estate at the expense of unsecured creditors. *See* 11 U.S.C. § 330(a)(3); *In re Project Orange Assocs., LLC*, 431 B.R. 363, 370 (Bankr. S.D.N.Y. 2010). The State's blanket reservation blatantly circumvents each of these safeguards.

42. The State's position is particularly problematic because it has not been retained or authorized by the Trustee to prosecute estate claims. To the contrary, the Trustee has expressly reserved "all rights of the Trustee to assert ownership of, or the exclusive right to pursue, such causes of action." No Rule 9019 agreement has been executed. No derivative standing has been granted by this Court. Section 327(a) also imposes a "disinterestedness" requirement—a professional may be employed only if the professional "does not hold or represent an interest adverse to the estate." 11 U.S.C. § 327(a). The State is not disinterested: it is a creditor of the Acacia estates, having filed proofs of claim seeking reimbursement of plugging and remediation costs, civil penalties, treble damages under FATA, and attorneys' fees—all of which are pecuniary interests that compete with other creditors' claims. A party with such substantial competing claims against the estate cannot simultaneously serve as an estate fiduciary prosecuting claims on behalf of the estate without an inherent conflict of interest. Under these circumstances, the State has no more right to seek reimbursement of its litigation costs as an administrative expense than would any other creditor who unilaterally litigates claims it believes should benefit the estate.

43. The Fifth Circuit has held that to qualify for administrative expense priority, a claim must arise "from a transaction with the debtor-in-possession" and must benefit the estate. *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001); *see also Reading Co. v. Brown*, 391 U.S. 471, 483 (1968). The State has rendered no services to the Trustee. It has not been engaged by the estate. Its litigation is being pursued at its own initiative, for its own purposes, in a forum of its own choosing. That the State may characterize some of its claims as overlapping with estate

14

causes of action does not transform its litigation expenses into administrative expenses of the bankruptcy estate. If it did, any creditor could pursue litigation against third parties, claim that any recovery would benefit the estate, and then seek reimbursement of its fees and costs as administrative expenses—a result that would stand the Bankruptcy Code's priority scheme on its head.

44.     The State's purported reservation reveals an internal inconsistency in its position. On the one hand, the State claims that it should be permitted to pursue UVTA and unjust enrichment claims in state court and that any recovery should be paid to the bankruptcy estate. On the other hand, the State reserves the right to file administrative claims for its litigation costs, which would be paid from the estate in priority to unsecured creditors. In other words, the State proposes to litigate claims it acknowledges may belong to the estate, recover money it says will benefit the estate, and then extract its litigation costs from the estate as an administrative expense—a self-dealing arrangement that would leave the estate worse off than if the Trustee had prosecuted the claims himself.

45.     The State cannot have it both ways. If the State is acting solely in its regulatory capacity, it has no basis to seek reimbursement of its litigation costs from the bankruptcy estate. If the State is acting on behalf of the estate—as its reservation of the right to file administrative claims for "successfully litigating the Estate claims" actually reveals—then it is functionally serving as an estate professional and must comply with the Bankruptcy Code's employment and fee application requirements.

46.     This Court made clear at the March 27, 2026, hearing that the Chapter 7 Trustee cannot simply enter into agreements giving other parties authority to pursue claims belonging to the estate without notice to creditors, parties in interest, and acknowledgment by this Court. The

same principle applies with even greater force to a party that seeks to pursue estate claims without any agreement at all—and then to bill the estate for its services. If the State wishes to pursue claims that belong to the bankruptcy estate, it must seek derivative standing through a properly noticed motion, subject to the procedural and substantive requirements courts have established. *See Louisiana World Exposition v. Fed. Ins. Co.*, 832 F.2d 1391, 1397 (5th Cir. 1987). If derivative standing is granted, the arrangement between the State and the Trustee regarding the allocation of recovery and the treatment of litigation costs should be embodied in a Rule 9019 agreement, subject to notice, objection, and court approval. The State cannot short-circuit this process by unilaterally reserving the right to file administrative claims after the fact.

47. The prejudice to the estate and its creditors from circumventing both the application to employ and fee application processes is substantial. If the State is permitted to pursue estate claims without employment approval and then seek reimbursement as an administrative expense, the estate will bear the costs of litigation over which it had no control. The Trustee will have had no opportunity to evaluate the cost-effectiveness of the litigation strategy, to supervise the prosecution of the claims, or to ensure that the litigation is being conducted in a manner that maximizes recovery for all creditors. The estate will be presented with a fait accompli—a bill for legal services it never authorized, rendered by counsel it never retained, in a forum it did not select, pursuant to a litigation strategy it did not approve. Moreover, the absence of court-approved employment means that the State's counsel has no fiduciary duty to the bankruptcy estate or its creditors. If the State's litigation strategy diverges from the interests of the estate—for example, by prioritizing injunctive relief over monetary recovery, or by settling claims on terms favorable to the State but unfavorable to other creditors—the estate has no recourse. These are precisely the scenarios both the application to employ and the fee application processes are designed to prevent.

16

48.     In sum, the State's conduct—filing a state-court action asserting claims it acknowledges may belong to the estate, prosecuting those claims without derivative standing or employment approval, and reserving the right to seek administrative expense treatment for its costs—represents a systematic circumvention of the Bankruptcy Code's procedural safeguards. The State has bypassed the application to employ process of Section 327, the disclosure requirements of Rule 2014, the disinterestedness review, the Rule 9019 approval process for settlements and agreements involving estate claims, and the fee application process of Sections 330 and 503 and Rule 2016. This Court should not permit the State to reap the benefits of estate professional status—administrative expense priority for its fees—while avoiding the obligations and oversight that status entails. For these reasons, the Court should deny the Lift Stay Motion and should specifically reject the State's purported reservation of the right to file administrative claims for its litigation costs.

**H.      The Court Should Award the Gilmore Parties Their Reasonable Attorneys' Fees and Costs.**

49.     The State's conduct warrants an award of the Gilmore Parties' reasonable attorneys' fees and costs incurred in opposing the Lift Stay Motion and addressing the State's parallel state-court filing. This Court has authority to grant such relief under 11 U.S.C. § 105(a), 28 U.S.C. § 1927, Federal Rule of Bankruptcy Procedure 9011, and its inherent equitable powers. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991); *In re Volpert*, 110 F.3d 494, 500–01 (7th Cir. 1997).

50.     On December 23, 2025—one day after filing its Motion to Determine—the State filed a New Mexico complaint asserting UVTA, unjust-enrichment, and veil-piercing claims that, by its own pleading, seek the return of "positive-value assets" to the Acacia estate. Those are estate causes of action whose prosecution is barred by 11 U.S.C. § 362(a)(1) and (a)(3), and the State

17

filed with full knowledge of these Chapter 7 cases. A stay violation is "willful" when the violator knows of the stay and intends the act; no specific intent to violate is required. *See In re Chesnut*, 422 F.3d 298, 302 (5th Cir. 2005). Section 362(k)(1) confirms that willful violations warrant an award of "actual damages, including costs and attorneys' fees," and reinforces the propriety of fee-shifting under this Court's § 105(a) and inherent authority.

51.     The State has multiplied these proceedings unreasonably by filing the Motion to Determine, then a parallel state-court complaint the next day in violation of the stay, then the Lift Stay Motion in advance of the Court-ordered Rule 9019 process, and then reserving an unauthorized administrative-expense claim against the estate for its own litigation costs. Each step has compelled the Gilmore Parties to incur fees that would have been unnecessary had the State proceeded properly and *first* requested relief from the stay in order to file their complaint in New Mexico.

52.     The Gilmore Parties accordingly request that the Court (a) find that the State willfully violated the automatic stay; (b) find that the Lift Stay Motion and the embedded request for derivative standing were frivolous and unreasonably multiplied these proceedings; and (c) award the Gilmore Parties their reasonable attorneys' fees and costs in an amount to be determined upon submission of a fee application within fourteen days of any order granting this relief.

## IV.  CONCLUSION

For the foregoing reasons, the Gilmore Parties respectfully request that this Court enter an Order:

(a)     Denying the Lift Stay Motion to the extent it seeks blanket relief to pursue all of the State's proposed causes of action in state court and requiring the State to immediately dismiss same in the New Mexico court;

(b)     Denying stay relief as to Counts II and III (UVTA claims), which are estate causes of action over which this Court has exclusive jurisdiction;

(c)     Denying stay relief as to all monetary claims against the Debtor—including civil penalties, reimbursement, indemnification, treble damages, attorneys' fees, and escrow obligations—with any such claims to be liquidated, if at all, and administered exclusively in this Court;

(d)     Denying the State's request for derivative standing to prosecute UVTA and unjust enrichment claims, without prejudice to a properly noticed motion supported by a complete record and required findings;

(e)     If the Court determines that certain of the State's claims fall within § 362(b)(4), limiting any such determination to prospective injunctive relief to enforce the Oil and Gas Act, and excluding the State's UVTA claims, unjust enrichment claims, and all other estate-recovery and pecuniary claims from any stay carve-out;

(f)     Including in any order the clarifying language requested by the Trustee, confirming that the Court is not making a final determination as to the ownership of specific causes of action, and that all rights of the Trustee to assert ownership of, or the exclusive right to pursue, such causes of action are expressly reserved;

(g)     Denying the State any right to administrative expense treatment for litigation costs incurred in pursuing claims belonging to or overlapping with causes of action of the bankruptcy estate, absent prior authorization from this Court through a properly noticed motion, compliance with the application to employ requirements of 11 U.S.C. § 327 and Federal Rule of Bankruptcy Procedure 2014, and compliance with the fee application requirements of 11 U.S.C. § 503 and Federal Rule of Bankruptcy Procedure 2016; and

(h)     Awarding the Gilmore Parties their reasonable attorneys' fees and costs incurred in opposing the Lift Stay Motion and addressing the State's stay-violating state-court filing, pursuant to 11 U.S.C. § 105(a), 28 U.S.C. § 1927, Federal Rule of Bankruptcy Procedure 9011, and this Court's inherent authority, in an amount to be determined upon submission of a fee application; and

(i)     Granting the Gilmore Parties such further relief as to which they may justly be entitled.

Dated: April 28, 2026                    /s/ *Beau H. Butler*
                                         **JACKSON WALKER L.L.P.**
                                         Jennifer F. Wertz (TX Bar No. 24072822)
                                         Beau H. Butler (TX Bar No. 24132535)
                                         100 Congress Avenue, Suite 1100
                                         Austin, TX 78701
                                         Telephone: (512) 236-2000
                                         Email: jwertz@jw.com
                                         Email: bbutler@jw.com

19

**JACKSON WALKER LLP**
Robert L. Soza, Jr. (TX Bar No. 18869300)
Reagan M. Marble (TX Bar No. 24087971)
Brandon Durrett (TX Bar No. 24061059)
Robert M. Biedrzycki (TX Bar No. 24111174)
1900 Broadway, Suite 1200
San Antonio, TX 78215
Telephone: (210) 978-7000
Email: rsoza@jw.com
Email: rmarble@jw.com
Email: bdurrett@jw.com
Email: bbiedrzycki@jw.com

*Counsel to Marquis Reed Gilmore Jr, Gilmore Oil & Gas, LP, Bluebird Energy Corporation, and Cibolo Energy*

## CERTIFICATE OF SERVICE

This is to certify that on this 28th day of April 2026, a true and correct copy of the foregoing document was served via the Court's CM/ECF electronic notification system upon the following:

**Debtor**
Brandon John Tittle
Tittle Law Firm, PLLC
13155 Noel Drive, Suite 900
Dallas, TX 75240
btittle@tittlelawgroup.com

**State of New Mexico and the Oil Conversation Division**
William G., Grantham
Esther C. Jamison
Assistant Attorney Generals
Environmental Protection Division
408 Galisteo Street
Santa Fe, NM 87501
wgrantham@nmdoj.gov
ejamison@nmdoj.gov

**Chapter 7 Trustee**
Herbert C. Shelton, II
Hayward PLLC
7600 Burnet Rd., Suite 530
Austin, TX 78757
cshelton@haywardfirm.com

**New Mexico Oil Conversation Division**
Jessee K. Tremaine
Michael Hall
Assistant General Counsel
Oil Conservation Division
Energy, Minerals and Natural Resources
Department
1220 South S. Francis Dr.
Santa Fe, NM 87505
jessek.tremaine@emnrd.nm.gov

**Midland Central Appraisal District**
Julie Ann Parsons
McCreary Veselka Bragg & Allen, P.C.
PO Box 1269
Round Rock, TX 78680
jparsons@mcbalaw.com

**Midland County**
Perdue, Brandon, Fielder, Collins & Mott,
L.L.P
PO Box 817
Lubbock, TX 79408
lmbkr@pbfcm.com

**New Mexico State Land Office**
Lynn Hamilton Butler
Husch Blackwell
111 Congress Avenue, Suite 1400
Austin, TX 78701
lynn.butler@huschblackwell.com

/s/ *Beau H. Butler*
Beau H. Butler

21