# SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is entered into by and between Ron Satija, the Chapter 7 Trustee for the bankruptcy estates of Acacia Operating Company, LLC and Acacia Resources, LLC (Bankr. W.D. Tex. 24-70194 and 24-70195, respectively) (the "Trustee"), and the State of New Mexico, by and through Attorney General Raúl Torrez, and the Oil Conservation Division ("OCD") of the New Mexico Energy, Minerals and Natural Resources Department (collectively, "New Mexico" or the "State") (the Trustee and New Mexico, together, the "Parties" and individually as a "Party").

### RECITALS

WHEREAS on December 27, 2024, Acacia Operating Company, LLC and Acacia Resources, LLC (the "Debtors") each filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code thereby commencing bankruptcy cases Bankr. W.D. Tex. 24-70194 and Bankr. W.D. Tex. 24-70195 (together, the "Bankruptcy Cases"), which have not been jointly or administratively consolidated;

WHEREAS on or about the same date, Ron Satija was appointed as Trustee for the Bankruptcy Cases;

WHEREAS the primary physical assets of the Debtors' estates include oil and gas leases, wells, and mineral rights located in New Mexico, which are regulated under State law;

WHEREAS the State alleges that the Debtors are subject to obligations under New Mexico law to plug inactive wells, remediate soil, restore land, and address alleged contamination associated with the Debtors' wells and related facilities;

WHEREAS the Trustee lacks sufficient funds to plug inactive wells, remediate soil, restore land, or satisfy all alleged environmental obligations asserted by the State;

WHEREAS the State has asserted that if the Debtors' estates fail to obtain the funds to address alleged environmental obligations, the State may be forced to plug wells on State and private land, at an anticipated average cost to the State of $163,000 per well. Further, the estimated cost for restoration and remediation of the wells and sites the State has identified ranges from a minimum of $50,000 per well to millions of dollars where alleged contamination from tank batteries and production facilities exists;

WHEREAS the State has asserted that if the Debtors do not fulfill alleged obligations to restore and remediate the Debtors' lands, that the State will have an administrative expense claim in the bankruptcy for the money the State has expended or will expend for plugging and remediation;

WHEREAS on December 11, 2025, the State contacted the Trustee and discussed the potential New Mexico State Court litigation that could benefit the bankruptcy estate.

WHEREAS based upon these discussions, on December 22, 2025, the State filed in this Court, *The State of New Mexico's Motion to Determine Inapplicability of the Automatic Stay Pursuant to 11 U.S.C. § 362(b)(4) to the State's Action Against the Debtor* (the State's "Motion to Determine") [Bankr. W.D. Tex. 24-70194 ECF No. 58; 24-70195 ECF No. 62];

WHEREAS on December 23, 2025, after discussions with the Chapter 7 Trustee, the State filed a complaint in the First Judicial District Court for the County of Santa Fe, New Mexico, Case Number D-101-CV-2025-03283, asserting the foregoing causes of action against the Debtor and non-debtor entities and preserving these causes of action for the Trustee (the "State Court Complaint");  the State immediately moved to hold the State Court litigation in abeyance until this bankruptcy court could approve an agreement between the State and the Trustee;

2

WHEREAS the State Court Complaint asserts, in pertinent part, police and regulatory causes of action against the Debtors for failing to plug wells, remediate soil, and restore land. Further, the State Court Complaint asserts police and regulatory causes of action under the State's Fraud Against Taxpayers Act against related non-debtor entities. The State Court Complaint also asserts causes of action against non-debtor entities under the Uniform Voidable Transactions Act ("UVTA") to recover the value of assets that were transferred out of the Debtors' well portfolio in exchange for inadequate consideration, as well as related causes of action for unjust enrichment, civil conspiracy, and corporate veil piercing;

WHEREAS the State and the Trustee were still in settlement discussions when, on January 12, 2026, the Trustee filed a limited objection to the State's *Motion to Determine*, asserting that several causes of action in the State's draft complaint may constitute property of the bankruptcy estate and requested that any order granting the State's *Motion to Determine* clarify that the Court is not making a final determination as to the ownership of the specific causes of action. Particularly, the Trustee asserts that the causes of action for Violations of the UVTA (Counts II and III), Unjust Enrichment (Count VI), Civil Conspiracy to Commit UVTA Violations (Count VII), and Veil piercing for Solis Partners, Pecos Slope Holdings, and Everett Willard Gray II (Count XI) belong in whole or in part to the bankruptcy estates (together, the "Estate Claims");

WHEREAS, on March 27, 2026, the Court held a hearing on the *Motion to Determine.* The Court directed that the Parties file a motion under Rule 9019 of the Federal Bankruptcy Rules of Procedure and an Agreement regarding the allocation of potential recoveries in the New Mexico State Court action and further directed the State to file a motion to lift the stay by April 13, 2026. The Court then reset the hearing on the State's *Motion to Determine* and the objections thereto till May 18, 2026.

WHEREAS on April 13, 2026, in accordance with the Court's directive, the State filed its Lift Stay Motion, to which the Trustee has filed a Limited Objection reiterating that several causes of action in the State Court Complaint constitute property of the bankruptcy estates;

WHEREAS the State and the Trustee agree that the Trustee holds the exclusive right to control, settle, release, and dismiss claims that are property of the Debtors' bankruptcy estates under 11 U.S.C. § 541(a), defined above as "Estate Claims";

WHEREAS due to the filing of these bankruptcy cases and subject to 11 U.S.C. section 544(b)(1), the Trustee owns certain causes of action in the State Court Complaint setout herein that would otherwise have belonged to the State, had the bankruptcy cases not been filed. As such, during the pendency of these bankruptcy cases, the Trustee controls these certain causes of action and can settle those causes of action in his position as Chapter 7 Trustee;

WHEREAS notwithstanding that the Trustee owns certain of the causes of action brought in the State Court Complaint, the State intends to prosecute that action, and the Trustee, to the extent necessary, delegates to the State his authority to prosecute or dismiss the estate causes action enumerated in the State Court Complaint;

WHEREAS the Parties have also reached an agreement in principle regarding the allocation of potential recoveries for estate causes of action in the State Court Complaint;

WHEREAS the Trustee and certain of the non-debtor entities (Everett Willard Gray II, Solis Partners, LLC, Pecos Slope Holdings, LLC, New Era Energy & Digital, Inc., First Gray Corporation, and WS Oil and Gas, Ltd. (collectively, the "New Era Defendants")) are currently in settlement discussions that may lead to a recovery for the bankruptcy estate arising from certain of the causes of action set forth in the State Court Complaint; and

4

WHEREAS a settlement between the Trustee and those non-debtor entities would resolve only the Estate Claims, and not the State Retained Claims, as those terms are defined herein. The State will be free to prosecute the State Retained Claims in New Mexico State Court following this resolution of any issues regarding application of the automatic stay.

**AGREEMENT**

NOW WHEREFORE, in consideration of the mutual covenants, agreements, releases, reservations, and undertakings set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties agree as follows:

1. **Defined Terms.**

1.1    "Bankruptcy Cases" means the chapter 7 bankruptcy cases of Acacia Operating Company, LLC, Case No. 24-70194-smr, and Acacia Resources, LLC, Case No. 24-70195-smr, pending in the United States Bankruptcy Court for the Western District of Texas.

1.2    "Debtors" means Acacia Operating Company, LLC and Acacia Resources, LLC, collectively.

1.3    "Estates" means the bankruptcy estates created in the Bankruptcy Cases under 11 U.S.C. section 541.

1.4    "State Action" means the civil action pending in the First Judicial District Court, County of Santa Fe, State of New Mexico, Case No. D-101-CV-2025-03283, including any amended complaint, severed proceeding, removed proceeding, remanded proceeding, appeal, or related proceeding asserting the claims described in the State's complaint.

1.5    "Estate Claims" means, for purposes of this Agreement, the claims asserted in the State Action that the Parties have agreed constitute property of the bankruptcy Estates under 11 U.S.C. § 541(a) and that will be controlled, settled, released, dismissed, and allocated as

5

Estate Claims, specifically: (a) Counts II and III for alleged violations of the UVTA; (b) Count VI for unjust enrichment, to the extent based on or derivative of the alleged transfers or transactions underlying Counts II and III; (c) Count VII for civil conspiracy, solely to the extent based on alleged conspiracy to commit UVTA violations; and (d) Count XI for veil piercing or alter ego liability with respect to Solis Partners, LLC, Pecos Slope Holdings, LLC, and Everett Willard Gray II, to the extent based on or derivative of the foregoing claims. Estate Claims also include any claims, rights, remedies, or causes of action owned, held, or controlled by the Trustee or the Estates under 11 U.S.C. sections 541 or 544 arising out of the same facts or transactions as the claims identified in this Section 1.5, except as provided in Section 1.6. For avoidance of doubt, Estate Claims do not include, and shall not be construed to include, any State Retained Claim, even if such State Retained Claim arises from, relates to, references, or depends on some or all of the same facts, transactions, transfers, wells, leases, parties, or conduct as an Estate Claim. This definition is intended to allocate control and recoveries between the Parties and is not an adjudication binding any non-party except to the extent provided in a final Bankruptcy Court order approving this Agreement.

1.6     "State Retained Claims" means all claims, rights, remedies, police and regulatory powers, enforcement rights, penalties, injunctive rights, reimbursement claims, restitution claims, and causes of action owned, held, or controlled by the State that are not Estate Claims. Without limitation, State Retained Claims include the following claims in the State Court Complaint: Oil and Gas Act ("OGA") claims asserted in Count I, the Fraud Against Taxpayer Act ("FATA") claims asserted in Counts IV and V, the conspiracy-to-commit-FATA claim asserted in Count VIII, other veil piercing or alter ego claims asserted in

Counts IX, X and XII, and any other police, regulatory, environmental, public health, public safety, fraud enforcement, or governmental claims or remedies that are not expressly included in Estate Claims.

1.7 "Recovery" means the gross recovery of any cash, property, interests in property, settlement proceeds, judgment proceeds, compromise proceeds, or other value of any kind received by or for the benefit of the Trustee, the Estates, or the State, whether by settlement, compromise, judgment, execution, collection, turnover, assignment, or other final resolution, on account of or arising from Estate Claims. Recovery does not include value received solely on account of State Retained Claims. For the avoidance of doubt, Recovery includes, but is not limited to, any such value received from the New Era Defendants on account of, or arising from, or related to, the Estate Claims.

1.8 "New Era Settlement" means any settlement or compromise between the Trustee and any or all New Era Defendants ("New Era Defendants" means Everett Willard Gray II; Solis Partners, LLC; Pecos Slope Holdings, LLC; New Era Energy & Digital, Inc.; First Gray Corporation; and WS Oil and Gas, Ltd.) that resolves any Estate Claims against any or all New Era Defendants, including any settlement payment made to the Trustee or any of the Estates in exchange for a release or dismissal of Estate Claims.

1.9 "Approval Order" means a final, non-appealable order of the Bankruptcy Court approving this Agreement under Rule 9019 of the Federal Rules of Bankruptcy Procedure or other applicable authority.

**2 Cooperation Agreement.**

2.1 The Parties agree to cooperate in the prosecution of the claims in the State Court Complaint, including, but not limited to, the production of documents in the custody and control of the Trustee

needed to prosecute the State Court litigation or to settle any outstanding causes of action *except, however,* the Trustee's agreement to cooperate shall cease when the Bankruptcy Cases are dismissed or otherwise closed. Further the State agrees to pay for any reasonable expense the Trustee incurs in association with producing documents that are not already in the Trustee's custody and control under this Section 2, and before incurring any expense, the Trustee will first discuss the potential cost with the State.

**3       Control and Settlement of Estate Claims.**

3.1     As between the Trustee and the State, and subject to entry of the Approval Order, the Trustee shall have the exclusive right and authority to control, prosecute, settle, compromise, release, and dismiss the Estate Claims for the benefit of the Estates and in accordance with this Agreement.

3.2     The State shall reasonably cooperate with the Trustee in effectuating any Bankruptcy Court-approved settlement, compromise, release, or dismissal of Estate Claims, including by filing, joining in, consenting to, or reasonably cooperating with any stipulation, notice, motion, proposed order, amended pleading, or other document necessary to dismiss Estate Claims that have been settled by the Trustee. Nothing in this Section requires the State to dismiss or impair any State Retained Claims.

3.3     The Trustee shall not compromise or release Estate Claims in a manner that purports to release State Retained Claims unless the State separately agrees in a writing signed by the State.

3.4     The Trustee agrees that the State has authority to file the Estate Claims in the State Court Complaint and to the extent necessary, delegates to the State his authority to prosecute or dismiss the estate causes action enumerated in the State Court Complaint. However, the Trustee retains the authority to settle or resolve Estate Claims.

**4.      Allocation and Distribution of Recovery.**

4.1      The Parties agree that any Recovery from Estate Claims shall be allocated between the State and the Estates under the following schedule:

a.  If the Estate Claims settle before discovery has commenced with respect to the Estate Claims, 35% of the Recovery shall be distributed to the State and 65% to the Estates;

b.  If the Estate Claims settle during or after discovery but before any dispositive motion is granted that, if granted, would lead to a resolution of the Estate Claims ("Dispositive Motion Practice"), 45% of the Recovery shall be distributed to the State and 55% shall be distributed to the Estates;

c.  If the Estate Claims settle after Dispositive Motion Practice, but before trial, 50% of the Recovery shall be distributed to the State 50% shall be distributed to the Estates;

d.  If the Estate Claims go to trial or settle during or after trial, 60% of the Recovery shall be distributed to the State and 40% shall be distributed to the Estates; and

e.  If the Estate Claims are resolved after notice of appeal from an order or judgment resolving the Estate Claims or settle during or after any appeal involving the Estate Claims, 70% of the Recovery shall be distributed to the State and 30% shall be distributed to the Estates.

The allocation of any distribution between the two estates (the estates of Acacia Operating Company, LLC and Acacia Resources, LLC) is within the sole discretion of the Trustee.

4.2      Any Recovery from the New Era Settlement shall be allocated under Section 4.1, with proceeds allocated to the estate of Acacia Resources, LLC. The Parties agree that, if the New Era

9

**Commented [EJ1]:** Do we need to add a para stating that Trustee will distribute its percentage in accordance with Bankruptcy Code?

**Commented [cs2R1]:** no. over encumbers. we're bound by that anyway

Settlement is executed and approved with respect to the Estate Claims before discovery in the State Court case has commenced, the Recovery from that settlement shall be treated as a settlement before discovery, resulting in 35% of such Recovery to the State and 65% of such Recovery to the estate of Acacia Resources, LLC.

**5. Causes of Action Not Subject to Split.**

For the avoidance of doubt, the Trustee and State agree that the State's claims under the OGA (Count I), FATA (Counts IV and V) and Civil Conspiracy to Commit FATA Violations (Count VIII) and other veil piercing (Counts IX, X and XII) are State Retained Claims and are not property of the bankruptcy Estates. Further, this Settlement Agreement does not impact, impair, or resolve the State's ability to bring or resolve the State Retained Claims.

**6. Withdrawal of Sale Motion.**

Further, the Trustee agrees to withdraw the proposed sale of certain estate assets to Jonathan Samaniego of American Energy Resources, LLC as set forth in the *Chapter 7 Trustee's Motion to Approve Sale of Certain Oil and Gas Leases and Related Property* [Bankr. W.D. Tex. 24-70194 ECF No. 93; 24-70195 ECF No. 81].

**7. Dismissal.**

Because of the environmental issues and liabilities asserted by the State, upon the final distribution of all Recovery funds, the Trustee shall move for dismissal of the Bankruptcy Cases rather than seeking to close the cases. The State shall support such relief to the extent consistent with this Agreement and applicable law.

**8. Releases.**

The State agrees to waive the Trustee's liability for penalties and violations under the OGA during the pendency of the bankruptcy to the extent that the liability and violations

exceed the Debtors' financial assurance with OCD for well plugging, and to the extent that liability and violations exceed any additional money, value, claims, notes, or claims that the State recovers for the Estates.

The State is not releasing any other parties pursuant to or under this Settlement Agreement.

**9.      Choice of Law and Venue.**

This Settlement Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas, without regard to its conflict of laws principles. Any action to enforce or interpret this Settlement Agreement shall be brought in the United States Bankruptcy Court for the Western District of Texas or any other court of competent jurisdiction. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive any objection to venue or any defense of an inconvenient forum to the extent any proceeding is brought to enforce the terms of this Settlement Agreement. For the avoidance of doubt, this Choice of Law and Venue provision does not apply to any claims or causes of action brought in the State Court litigation and is solely limited to the application or enforcement of this Settlement Agreement by and between the Trustee and the State.

Nothing in this Agreement or the Approval Order constitutes a waiver of the State's sovereign immunity, Eleventh Amendment immunity, police and regulatory powers, or jurisdictional defenses, except solely to the extent necessary for the Bankruptcy Court to approve and enforce this Agreement according to its express terms. The State Action and all State Retained Claims shall be governed by applicable New Mexico and federal law.

This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. A signature delivered by facsimile, email, or other electronic means (including PDF) shall be

11

deemed an original signature and shall have the same force and effect as a manually executed original.

**10.        No Admission; Rule 408.**

This Agreement is a compromise of disputed matters. Neither this Agreement, nor the negotiations leading to it, nor any act performed under it, shall be deemed or construed as an admission of liability, wrongdoing, ownership of claims, standing, damages, or the truth of any allegation or defense asserted in the Bankruptcy Cases, the State Action, or any other proceeding. The Parties reserve all rights except as expressly compromised, allocated, released, waived, or undertaken in this Agreement.

**11.        Representations and Authority.**

Each Party represents that it has authority to enter into this Agreement, subject to Bankruptcy Court approval where required, and that the person executing this Agreement on behalf of that Party is authorized to do so. Each Party represents that it has had the opportunity to consult with counsel, has reviewed this Agreement, enters into it voluntarily, and is not relying on any representation or promise not expressly set forth in this Agreement. Each Party represents that it has not assigned or transferred any claim, right, or interest that would prevent it from performing this Agreement.

**12.        Miscellaneous.**

12.1 Entire Agreement. This Agreement constitutes the entire agreement between the Parties concerning its subject matter and supersedes all prior or contemporaneous agreements, negotiations, communications, and understandings concerning that subject matter.

12.2 Amendments. This Agreement may be amended only in a writing signed by the Parties and, if required, approved by the Bankruptcy Court.

12.3 <u>Costs and Fees</u>. Each Party shall bear its own attorneys' fees, costs, and expenses incurred in negotiating, documenting, seeking approval of, and implementing this Agreement, except as otherwise expressly provided herein or ordered by the Bankruptcy Court.

12.4 <u>Successors and Assigns</u>. This Agreement shall bind and benefit the Parties and their respective successors, assigns, representatives, trustees, agents, and persons acting by or through them.

12.5 <u>Severability</u>. If any provision of this Agreement is held invalid, illegal, or unenforceable, the remaining provisions shall remain in full force and effect to the maximum extent permitted by law.

12.6 <u>Recitals</u>. The Recitals are incorporated into and made part of this Agreement. If a Recital conflicts with an operative provision, the operative provision controls.

**SIGNATURES**

The undersigned execute this Settlement Agreement as of the dates set forth below,

effective for all purposes as of the Effective Date.

**HAYWARD PLLC**

*/s/ Charlie Shelton*
Charlie Shelton
Texas Bar No: 24079317
Bach W. Norwood
TX Bar No. 24134529
7600 Burnet Road, Suite 530
Austin, TX 78757
(737) 881-7100 (Phone/fax)
cshelton@haywardfirm.com
bnorwood@haywardfirm.com'

*Counsel for Ron Satija, Chapter 7 Trustee*

*/s/ Abigail Rushing Ryan* [signed with permission]
Abigail Rushing Ryan
TX State Bar No. 24035956
Bankruptcy Counsel
National Association of Attorneys General
1850 M Street NW, 12th Floor
Washington, DC 20036
aryan@naag.org

COUNSEL FOR THE STATE OF NEW MEXICO

*/s/ Esther C. Jamison*
Raúl Torrez
*Attorney General*
William G. Grantham
Esther C. Jamison
*Assistant Attorneys General*
Environment Protection Division
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501

*Counsel for the State of New Mexico and the Oil Conservation Division,*
*New Mexico Energy, Minerals and Natural Resources Department.*

14

Jesse K. Tremaine
*Legal Director*
Michael Hall
*Assistant General Counsel*
Oil Conservation Division
Energy, Minerals and Natural Resources Department
1220 South S. Francis Dr.
Santa Fe, NM 87505
jessek.tremaine@emnrd.nm.gov
michael.hall@emnrd.nm.gov

*Counsel for the Oil Conservation Division,*
*New Mexico Energy, Minerals and Natural Resources Department.*