**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

|  |  |
|---|---|
| In re: | Chapter 7 |
| ACACIA OPERATING COMPANY, LLC | Case No. 24-70194-SMR |
| Debtor. |  |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE GILMORE PARTIES TO THE TRUSTEE'S RULE 9019 SETTLEMENT MOTIONS**

Marquis Reed Gilmore Jr., Gilmore Oil & Gas, LP, Bluebird Energy Corporation, and Cibolo Energy (the "Gilmore Parties") submit this Limited Objection and Reservation of Rights ("Limited Objection") to (I) the Motion Pursuant to Bankruptcy Rule 9019 for Entry of Order Approving Settlement Between the Chapter 7 Trustee and the New Era Defendants [Dkt. 161] (the "New Era Settlement Motion"), seeking approval of the Settlement Agreement Between Chapter 7 Trustee and New Era Defendants (the "New Era Settlement Agreement"), and (II) the Amended Motion Pursuant to Bankruptcy Rule 9019 for Entry of Order Approving Settlement Between the Chapter 7 Trustee and the State of New Mexico and the Oil Conservation Division [Dkt. 163] (the "State Settlement Motion," and together, the "Settlement Motions"), seeking approval of the Settlement Agreement and Release Between Chapter 7 Trustee and the State of New Mexico (the "State Settlement Agreement," and together, the "Settlement Agreements"). The Gilmore Parties request that approval be conditioned on entry of orders (the "New Era Settlement Approval Order" and "State Settlement Approval Order," together, the "Settlement Approval Orders") that include provisions set forth herein and in the attached Proposed Orders, incorporating provisions consistent with the Chevron Objection [Dkt. 168] to the extent applicable.

The Gilmore Parties have an agreed extension to respond through June 18, 2026. See Dkt. 167. This filing is timely.

## I.      SUMMARY OF LIMITED OBJECTION

1.      Absolutely no authority has been cited to support the proposition that New Mexico should be allowed to circumvent the central policy of the Bankruptcy Code.

2.      The Gilmore Parties file this Limited Objection to protect and preserve their rights against the New Era Defendants, ensure the Gilmore Parties' ability to assert administrative expense claims remains unimpaired and that such claims are adjudicated before dismissal, and to ensure that the settlement funds paid to New Mexico (if any) are applied to plugging, remediation, and restoration, or to reimburse parties for performing same.

3.      As to the New Era Settlement Agreement, the Gilmore Parties generally do not oppose, aside from the allocation of settlement funds to New Mexico, which should be stricken. This should not be construed as a waiver of any rights by the Gilmore Parties to pursue claims for the New Era Settlement Agreements obvious breach of prior settlement agreements between members of the Gilmore Parties, the New Era Defendants, and the Debtor/Trustee.

4.      As to the New Mexico Settlement Agreement, while a properly presented request (supported by authority) for New Mexico to pursue causes of action in state court on behalf of the bankruptcy estate could be approved, as currently drafted, the requested settlement raises serious questions regarding the distribution of estate assets, the actual claims to be litigated, the rights of interested parties, and violations of prior settlement agreements. Attached hereto as **Exhibits A & B** are revised proposed orders regarding the Settlement Agreements that incorporate certain provisions from the Chevron Objection to the extent applicable.

## II.    THE GILMORE PARTIES HAVE STANDING TO OBJECT

5.    The Gilmore Parties have standing to file this Limited Objection. They are noticed parties to the Settlement Motions and named defendants in the State's complaint on multiple counts, including veil-piercing, civil conspiracy, UVTA avoidance, and unjust enrichment. A party haled into a parallel forum on claims intertwined with core bankruptcy matters has a concrete stake in the disposition of those claims. *See Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 278–79 (2024).

6.    Cibolo Energy is a scheduled secured creditor with a multi-million-dollar claim and was reinstated to active status by the Texas Secretary of State on April 6, 2026, mooting any prior standing challenge. *See Kaiser Gypsum*, 602 U.S. at 278–79. Mr. Gilmore is also party to a prior confidential settlement agreement with Everett Willard Grey, II and Acacia Resources, LLC—the New Era Settlement is a clear violation of this agreement.

7.    Mr. Gilmore is an individually named defendant subject to asserted liability, giving him a direct stake in any settlement determining how Estate Claims are prosecuted and allocated. *See Kaiser Gypsum*, 602 U.S. at 278–79.

8.    Gilmore Oil & Gas, LP and Bluebird Energy Corporation are named defendants facing potential joint and several liability. Exposure to parallel litigation implicating core estate functions and prior orders of this Court confers standing. *See Kaiser Gypsum*, 602 U.S. at 278–79.

9.    The Gilmore Parties have a direct connection to the Debtor's leases and wells. New Mexico has asserted that the Gilmore Parties bear responsibility for plugging and remediation obligations and may incur substantial costs. Additionally, Cibolo Energy holds an allowed secured claim. The Gilmore Parties thus have a concrete financial stake in the Settlement Motions, in addition to holding independent claims referenced in Section F below.

## III.  LIMITED OBJECTION

### A.  New Mexico Has No Legal Authority to Receive Direct Payment from Estate Claims.

10.  Both the Trustee and New Mexico concede that the UVTA claims are property of the bankruptcy estates. The State Settlement Agreement provides that "the Trustee holds the exclusive right to control, settle, release, and dismiss claims that are property of the Debtors' bankruptcy estates under 11 U.S.C. § 541(a)."

11.  Yet the Settlement Agreements would allocate $350,000 of the $1,000,000 New Era Settlement directly to New Mexico before any distribution through the bankruptcy process. Neither the Settlement Motions nor the Settlement Agreements cite any statute, case, or rule permitting a governmental unit to bypass the Bankruptcy Code's priority scheme through a side-deal for estate property. None exists.

12.  Section 726's priority scheme is mandatory, not negotiable. *See Begier v. IRS*, 496 U.S. 53, 58 (1990). The police and regulatory powers exception under Section 362(b)(4) permits enforcement of regulatory obligations—not collection of monetary recoveries outside the distribution waterfall. *See In re CORCO*, 805 F.2d 1175, 1185–88 (5th Cir. 1986). If New Mexico has an administrative expense claim, it must prove it through the proper process.

13.  This allocation would prejudice Cibolo Energy's secured claim and the Gilmore Parties' potential administrative expense claims for plugging and remediation—both of which take priority over New Mexico's unsecured claims under the Code.

14.  The Gilmore Parties request that the Settlement Approval Orders provide that any recovery on Estate Claims be distributed in accordance with the Bankruptcy Code, including Section 726, with no direct payment to New Mexico outside the priority scheme.

B.      **The New Era Release Must Be Expressly Limited to Estate Claims.**

15.      Section 1.3 of the New Era Settlement Agreement releases the New Era Defendants from "any and all actions, causes of action, suits, claims, rights, damages, losses, liabilities, costs, expenses, attorneys' fees, contracts, agreements, obligations, or controversies of any nature whatsoever" arising from the facts underlying the Trustee's claims. This release is extremely broad. The New Era Settlement Approval Order should clarify that the release extends only to "Estate Claims" (as defined in Section 1.5 of the State Settlement Agreement) and does not affect rights held by the Gilmore Parties or other third parties, including claims for contribution, indemnification, reimbursement, or environmental-related causes of action.

16.      In addition to those laid out herein, the Gilmore Parties may have independent claims against the New Era Defendants arising from the environmental conditions of the Debtor's wells, leases, and facilities. These claims are not estate property and should not be released or impaired by the New Era Settlement Agreement.

17.      The Gilmore Parties request that the New Era Settlement Approval Order provide that (a) nothing in the New Era Settlement Agreement or Order releases, bars, or impairs any claims held by persons other than the Trustee, the bankruptcy estates, or New Mexico against the New Era Defendants, including claims for contribution, indemnification, or reimbursement; and (b) the release in Section 1.3 extends only to Estate Claims and does not release non-Estate Claims held by parties who have incurred costs in plugging, remediation, or other environmental work.

C.      **The Structured Dismissal Must Provide for Adjudication of Administrative Expense Claims.**

18.      The State Settlement Agreement provides that upon final distribution of recovery funds, the Trustee shall move for dismissal rather than closure. This proposed structured dismissal—negotiated between only the Trustee and the State—would prejudice the rights of

creditors, including the Gilmore Parties, by: (a) distributing all available funds before parties have the opportunity to assert administrative expense claims; (b) failing to provide an orderly administrative claims process; and (c) eliminating the only solvent source of recovery before environmentally obligated parties can seek reimbursement.

19.     The Gilmore Parties may have administrative expense claims under 11 U.S.C. § 503(b)(1)(A) for actual, necessary costs incurred in preserving estate property. The Settlement Approval Orders should provide a mechanism for such claims to be asserted and adjudicated before dismissal. The Trustee should also provide at least thirty days' written notice to all known creditors before seeking dismissal.

20.     The Gilmore Parties request that the Settlement Approval Orders provide that, in addition to requiring the Trustee to provide adequate notice before moving for dismissal, nothing precludes any party from asserting administrative expense claims under Section 503(b)(1)(A).

**D.     The Settlement Approval Orders Must Preserve the Parties' Independent Claims and Discovery Rights.**

21.     The Gilmore Parties are named defendants in the State Court Case and may have independent claims against the New Era Defendants. The Settlement Approval Orders should not preclude the Gilmore Parties from asserting such claims or obtaining discovery necessary to defend themselves or pursue contribution, indemnification, or reimbursement claims.

22.     The Settlement Approval Orders should provide that Section 2.3 of the New Era Settlement Agreement and Section 10 of the State Settlement Agreement are binding only on the parties to those agreements, and nothing prohibits non-parties from independently establishing facts relating to the conduct of the New Era Defendants or any other party.

23.     The New Era Settlement Approval Order should further provide that in addition to the other Estate Claims, the UVTA claims and the claims for unjust enrichment have been fully

satisfied by the New Era Settlement and that no further recovery on those claims may be sought against any party.

24.     The Orders should provide that (a) nothing affects claims for breach of any agreements, including confidentiality obligations, and (b) no information obtained in breach of confidentiality obligations may be used against non-settling parties in the State Court litigation.

25.     The Orders should preserve rights under pre-existing agreements. Additionally, any recovery on Estate Claims shall be distributed in accordance with the Bankruptcy Code, including 11 U.S.C. § 726, and Cibolo Energy's secured claim shall be satisfied before distribution to unsecured creditors.

**E.      Settlement Funds Should Be Applied to Plugging, Remediation, and Restoration.**

26.     The State Settlement Agreement lacks specificity regarding New Mexico's use of the $350,000 it will receive. The State Settlement Motion references the State's assertion that plugging costs average $163,000 per well, plus $50,000 per well for restoration and remediation. However, there is no directive that the State use the proceeds for that purpose.

27.     The State's statutory position consists of imposing plugging and remediation obligations on non-debtor parties, including the Gilmore Parties. Accordingly, settlement funds paid to New Mexico should be applied directly to plugging, remediation, and restoration—or to reimburse parties, including the Gilmore Parties, who perform such work.

28.     The Gilmore Parties request that the State Settlement Approval Order provide that any funds received by New Mexico shall be held and applied exclusively to plugging and/or reimbursing parties who have incurred or will incur actual costs performing such work. The State should further be required to provide an accounting upon request.

**F. The Gilmore Parties Hold Independent Claims Arising from Pre-Existing Agreements.**

29.     Independent of the Estate Claims, the members of the Gilmore Parties (Marquis Reed Gilmore specifically) hold claims arising from pre-existing contractual arrangements among Mr. Gilmore, Everett Willard Gray II, debtor Acacia Resources, LLC (and the Trustee as successor), and others. The Gilmore Parties hereby place the Court and all parties on notice of these claims, which are not released or impaired by the Settlement Agreements and must be preserved in any Settlement Approval Orders.

30.     Specifically, Mr. Gilmore has claims for breach of confidentiality obligations against Everett Willard Gray II, debtor Acacia Resources, LLC, and the Trustee as successor in interest to the Debtor. These claims arise from the unauthorized disclosure of confidential information in violation of contractual obligations. The Gilmore Parties reserve all rights to pursue these claims in the appropriate forum and at the appropriate time.

31.     Mr. Gilmore also has claims for tortious interference against certain of the New Era Defendants and the State of New Mexico. These claims arise from conduct that induced or procured breaches of contractual obligations owed to Mr. Gilmore. The Gilmore Parties reserve all rights to pursue these claims in the appropriate forum and at the appropriate time.

32.     The Gilmore Parties request that the Settlement Approval Orders expressly provide that nothing in the Settlement Agreements or Orders releases, bars, impairs, or otherwise affects the Gilmore Parties' claims for breach of confidentiality or tortious interference, which are independent of and unrelated to the Estate Claims.

## IV.    RESERVATION OF RIGHTS

33.     The Gilmore Parties reserve all rights with respect to the proposed settlements and any proposed dismissal. Nothing in this Limited Objection constitutes a waiver of any rights,

remedies, defenses, claims, interests, or privileges under the Bankruptcy Code, applicable law, or any contractual rights in connection with the Debtor's leases and wells. The Gilmore Parties reserve the right to amend or supplement this Limited Objection at any time.

## V.  REQUESTED RELIEF

WHEREFORE PREMISES CONSIDERED, the Gilmore Parties respectfully request that the Court:

(a)  Condition approval of the Settlement Motions on entry of Settlement Approval Orders including the protective provisions set forth herein and in the attached Proposed Orders;

(b)  Alternatively, deny or continue the hearing if the protective provisions are not included;

(c)  Reserve and preserve the Gilmore Parties' rights as described herein; and

(d)  Grant the Gilmore Parties such other and further relief as the Court deems just and proper.

Dated: June 18, 2026

/s/ *Beau H. Butler*
**JACKSON WALKER L.L.P.**
Jennifer F. Wertz (TX Bar No. 24072822)
Beau H. Butler (TX Bar No. 24132535)
100 Congress Avenue, Suite 1100
Austin, TX 78701
Telephone: (512) 236-2000
Email: jwertz@jw.com
Email: bbutler@jw.com

**JACKSON WALKER LLP**
Robert L. Soza, Jr. (TX Bar No. 18869300)
Reagan M. Marble (TX Bar No. 24087971)
Brandon Durrett (TX Bar No. 24061059)
Robert M. Biedrzycki (TX Bar No. 24111174)
1900 Broadway, Suite 1200
San Antonio, TX 78215
Telephone: (210) 978-7000
Email: rsoza@jw.com
Email: rmarble@jw.com

Email: bdurrett@jw.com
Email: bbiedrzycki@jw.com

***Counsel to Marquis Reed Gilmore Jr, Gilmore Oil & Gas, LP, Bluebird Energy Corporation, and Cibolo Energy***

## CERTIFICATE OF SERVICE

This is to certify that on the 18th day of June 2026, I caused a true and correct copy of the foregoing to be served via the CM/ECF notification system for the Western District of Texas upon the parties listed below:

**Debtor**
Brandon John Tittle
Tittle Law Firm, PLLC
13155 Noel Drive, Suite 900
Dallas, TX 75240
btittle@tittlelawgroup.com

**Chapter 7 Trustee**
Herbert C. Shelton, II
Hayward PLLC
7600 Burnet Rd., Suite 530
Austin, TX 78757
cshelton@haywardfirm.com

**State of New Mexico and the Oil Conversation Division**
William G., Grantham
Esther C. Jamison
Assistant Attorney Generals
Environmental Protection Division
408 Galisteo Street
Santa Fe, NM 87501
wgrantham@nmdoj.gov
ejamison@nmdoj.gov

**New Mexico Oil Conversation Division**
Jessee K. Tremaine
Michael Hall
Assistant General Counsel
Oil Conservation Division
Energy, Minerals and Natural Resources
Department
1220 South S. Francis Dr.
Santa Fe, NM 87505
jessek.tremaine@emnrd.nm.gov

**Midland Central Appraisal District**
Julie Ann Parsons
McCreary Veselka Bragg & Allen, P.C.
PO Box 1269
Round Rock, TX 78680
jparsons@mcbalaw.com

**Midland County**
Perdue, Brandon, Fielder, Collins & Mott, L.L.P
PO Box 817
Lubbock, TX 79408
lmbkr@pbfcm.com

**New Mexico State Land Office**
Lynn Hamilton Butler
Husch Blackwell
111 Congress Avenue, Suite 1400
Austin, TX 78701
lynn.butler@huschblackwell.com

/s/ *Beau H. Butler*
Beau H. Butler