UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF TEXAS

MIDLAND DIVISION

**FILED**

**JUN 22 2026**

U.S. BANKRUPTCY COURT
BY_____DEPUTY

IN RE:

ACACIA OPERATING COMPANY, LLC  §  Chapter 7
                               §
                               §  Case No. 24-70194
                        Debtor§
                               §
                               §

<u>RESPONSE AND AMENDED AND OBJECTION TO THE STATE OF NEW MEXICO'S
OBJECTION TO CHAPTER 7 TRUSTEE'S MOTION TO APPROVE SALE OF CERTAIN OIL AND
GAS LEASES AND RELATED PROPERTY
(Doc. 93)</u>

In response to the State of New Mexico's objection raised, the purchaser American clarify and amend the proposed transaction as follows and; The objecting party objection is overreaching because it attempts to:

See attachment of asset list amend all NRI and100% working interests or any others on state and federal subject lands to a 100% Convertible ORRI or any others and further the asset list of the 5 wells on Fee lands with all interests, together with all associated rights listed on amend asset list and further rights to collect any past dues and any payments due of any kinds.

The State's Objection is frivolous in nature on its face, because it is built almost entirely on speculation, hypothetical future events, and conclusory allegations that do not present legal violations or actual injury.
The State's Objection is frivolous in nature on its face, because the State claims contradict with it admittance in its own objection on paragraph number 23, that "OCD cannot identify acceptable terms that comport with its mandate to enforce the Oil and Gas Act and its associated rules".

Most critically, the State itself admits throughout its filing that any transfer remains fully subject to its own regulatory approval process and enforcement powers. The State expressly acknowledges that:

a) "The Purchaser must satisfy all requirements" of New Mexico regulations before any transfer becomes effective;
b) The State retains full authority to deny transfer applications;
c) The sale is "void" if approval is denied;
d) Nothing in the proposed sale extinguishes plugging obligations or impairs the State's police powers.

Those admissions destroy the foundation of the State's objection.

The State cannot simultaneously argue that:
(1) It possesses absolute regulatory authority to approve, condition, or deny any transfer; and yet also claims (2) the mere approval of the sale motion somehow causes imminent irreparable harm.

It does not.

The State repeatedly concedes that no wells can transfer without OCD approval and compliance with applicable regulations. If the purchaser fails to satisfy bonding, compliance, or operational requirements, the State already admits it has complete authority to reject the transfer. That alone renders the objection premature, speculative, and baseless.

The State's Objection is therefore nothing more than an attempt to block the Trustee's authority under 11 USC 363 based on hypothetical future conduct that may never occur.

Even worse for the State, its own filing confirms that the protections it seeks already exist under current law. The State admits:

e) Plugging obligations survive bankruptcy;
f) The State retains enforcement authority;
g) Financial assurance requirements remain enforceable;
h) Transfer approval remains entirely within the State's discretion

Accordingly, the State identifies no actual legal deficiency in the proposed sale itself. Instead, it offers only conjecture that the Purchaser American"may" later become insolvent or "may" seek bankruptcy protection in the future. Such speculation is not evidence and cannot support denial of a bankruptcy sale.

The State's argument also improperly attempts to impose extra statutory conditions on the Trustee based on generalized policy concerns rather than applicable bankruptcy law. The bankruptcy code does not require a purchaser to prove indefinite future profitability to acquire distressed assets. If it did, virtually no bankruptcy asset sale would ever occur.

Further undermining the objection is the State's own admission that It can:
   i) Require additional financial assurance;
   j) Impose compliance schedule;
   k) Deny operator transfers;
   l) Pursue forfeiture rights;
   m) Assert administrative claims;
   n) Enforce plugging obligations pose sale.

Those admissions conclusively establish that the State is already adequately protected.

The objection therefore boils down to an improper attempt to veto the sale entirely because the State dislikes the economics of the transaction. But dissatisfaction with the purchase price or distrust of future business operations is not a lawful basis to deny a 363 sale.

The State's own filing proves the opposite of what it argues: the regulatory framework already protects the State at every stage of the process.

Because the State admits it retains full enforcement authority, full transfer approval authority, full bonding authority, and full remedial authority, its objection lacks any showing of immediate harm, legal prejudice, or impairment of rights.

Furthermore, The State's reliance on unresolved NOVs and historical allegations is especially improper given the NMOCD documented history of failing to pursue alleged violations through proper adjudicative and Attorney General enforcement channels, and at its core the State attempts to weaponize prior operator Notice of Violations ("NOVs") against a proposed purchaser that was neither the operator of record, nor the cited party, nor afforded notice and opportunity to cure under basic constitutional standards.

**19.15.5.10      ENFORCEMENT:**
      **A.      General.** Whenever the division determines that a person violated or is violating the Oil and Gas Act or a provision of any rule, order, permit or authorization issued pursuant to the Oil and Gas Act, the division may seek a sanction by:

      **C.      Notice of violation.**

(1)        A notice of violation issued by the division shall state with reasonable specificity:
    (a)        the identity of the alleged violator;
    (b)        the nature and factual and legal basis of the alleged violation, including the provision of the Oil and Gas Act or rule, order, permit or authorization allegedly violated;
    (c)        whether compliance is required immediately or within a specified time period;
    (d)        the sanction(s) available for the alleged violation, the sanction(s) proposed by the division, and a statement that the division will take into consideration the violators good faith efforts to comply with the applicable requirements;
    (e)        the availability of a process for informal review and resolution of the alleged violation, and the procedure to initiate the informal review process, including the contact information of the appropriate division employee;
    (f)        a statement that if the notice of violation is not informally resolved within 30 days of service, the division will hold a hearing, but that the hearing shall not prohibit the parties from negotiating and settling the notice of violation at any time; and
    (g)        the date of the hearing, which shall be no later than 90 days after the date of the notice of violation.

(2)        The division **"shall"** serve the notice of violation on the alleged violator by certified mail, and **"may"** provide the notice of violation by electronic mail if possible.

o)  The State failed to identify an alleged violator;

p)  The State admitted in its own objection in paragraph number **23** that it **"OCD cannot identify acceptable terms that comport with its mandate to enforce the Oil and Gas Act and its associated rules"**, failing factual and legal basis of the alleged violations.

q)  The State failed to hold a hearing as required by law and due process rights for the alleged violator or new violator;

r)  The State failed to serve notice of violations on the alleged violator by certified mail;

s)  The key word "shall" serve by certified mail indicates a mandatory obligation or requirement, and the difference is that "may" provide by electronic mail, which implies discretion and permission (an option).

The State evidently failed at its own charged obligated duties to follow New Mexico laws appropriately and further failed to send its NOVs to the appropriate operator by certified mail as its mandatory obligated duties requires.

The State's entire case is built on their own frivolous basis to an error of their own making, by the State's own admittance which in fact highlights a serious internal department issue to attempt to falsely label a prudent operator such as the purchaser American numerous derogatory labels with the intent to erroneously portray a villain of some sort without merits with standing for its claims.

That is textbook due process violations.

The NMOCD abetted by the State have repeatedly relied upon unresolved notice of prior operators, informal accusations, and regulatory insinuations as substitutes for actual adjudicated liability.

An NOV is not a final judgment. It is not conclusive proof of liability and Absent the proper enforcement proceedings, as was done in this matter, it cannot constitutionally serve as the basis for denying property rights or obstructing a bankruptcy sale under 363.

The State repeatedly references historical compliance issues and prior bankruptcies to insinuate misconduct by the proposed purchaser while deliberately ignoring a critical legal fact: regulatory NOVs are operator specific enforcement mechanism. They are not hereditary liabilities that automatically attach to unrelated future purchasers absent statutory transfer procedures, adjudication, or proper administrative process.

The State cannot constitutionally bootstrap prior operator liabilities on a new operator merely because it dislikes the transaction structure or speculates about future insolvency.

The State's attempt to weaponize unresolved administrative allegations while bypassing the procedural safeguards required for actual enforcement is fundamentally inconsistent with due process and basic principles of administrative law.

To date the Purchaser and its Counsel have not received any certified mailed letter as required by New Mexico law.

More importantly, the State's own objection destroys its position.

The State expressly admits:
- t)  Any transfer remains subject to OCD approval;
- u)  The State may deny any transfer applications;
- v)  The State may require additional bonding;
- w)  The State retains full enforcement authority;
- x)  Plugging obligations survive bankruptcy;
- y)  The sale becomes ineffective absent State approval.

Those admissions are fatal to the objection.

The State cannot simultaneously argue:

(1) It has complete regulatory control over whether the transfer occurs at all; while also arguing

(2) The mere filing of the sale motion creates irreparable harm.

That position is absurd on its face.

If the purchaser American is allegedly unqualified, the State already concedes it can deny the transfer outright under its own regulatory framework. If additional financial assurance is needed, the State admits it can require it. If plugging obligations arise, the State admits those obligations survive and remain enforceable.

The purchaser is in compliance with New Mexico law as to the following:

**19.15.5.9      COMPLIANCE:**
A.      An operator is in compliance with Subsection A of 19.15.5.9 NMAC if the operator:
(1) currently meets the financial assurance requirements of 19.15.8 NMAC;
(2) is not subject to a division or commission order, issued after notice and hearing, finding the operator to be in violation of an order requiring corrective action;

Which the purchaser is in compliance with its $75,000 Cash blanket bond and further has three $50,000 Cash single well bonds for each of its 3 active wells. Bringing the purchaser American total bonding to $225,000 Cash total bonds to operate.

(See purchaser American bonds exhibits B and C)
(See purchaser exhibits D, E, F, G, H, I, J, K and L)

**19.15.8.9      CATEGORIES AND AMOUNTS OF FINANCIAL ASSURANCE FOR WELL PLUGGING:**
C.      **Active wells.** An operator shall provide financial assurance for wells that are covered by Subsection A of 19.15.8.9 NMAC and are not subject to Subsection D of 19.15.8.9 NMAC in one of the following categories:
        (1)      a one well financial assurance in the amount of $25,000 plus $2 per foot of the projected depth of a proposed well or the depth of an existing well; the depth of a well is the true vertical depth for vertical and horizontal wells and the measured depth for deviated and directional wells; or
        (2)      a blanket plugging financial assurance in the following amounts covering all the wells of the operator subject to Subsection C of 19.15.8.9 NMAC:
                (a)      $50,000 for one to 10 wells;
                (b)      $75,000 for 11 to 50 wells;
                (c)      $125,000 for 51 to 100 wells; and
                (d)      $250,000 for more than 100 wells.

The purchaser by the burden of proof has provided proof of its adequate financials assurances for its current operations and purchase of operations, because the purchaser current wells are currently bonded with a $75,000 Cash blanket plugging bond, and by New Mexico law is allowed to have up to 50 wells, and since the purchaser is only acquiring 5

active Fee wells and their associated interests and the other interests related to State and Federal are a convertible ORRI as mentioned requests is in fact confirms the purchaser currently has adequate financial assurances under New Mexico law and rules.

The Attorney General in its objection made statements in paragraph number **25** as to the following:

> "**25.** To meet 19.15.8.9 NMAC's requirements, AER would need to post sufficient financial assurance for the wells prior to approval of the transfer. At minimum, **AER would need to post a $125,000 blanket bond** per 19.15.8.9(C)(2)(c)".

Under New Mexico law a bond increase to $125,000 Bond would be inappropriate given the circumstances of the purchasers current 9 wells status and its current attempt to purchase 5 wells from the bankruptcy would bring the purchasers total wells to 14 total wells and would be considered excessive bonding by New Mexico law and rules.

**The purchaser American as being reasonable, will provide such bond increase to $125,000 blanket bond as the Attorney General required, even though it is not required by New Mexico state law and shows the professionalism and commitment and good faith efforts American Energy Resources has provided and will continue to provide as a prudent operator following New Mexico laws and rules.**

The State lacks jurisdiction under its own State rules, under the following:

**NMSA 1978 Section 19-10-13**

Provided, however, the record owner of any oil and gas lease may enter into any contract for the development of the leasehold premises or any portion thereof, or may create overriding royalties or obligations payable out of production, or enter into any other agreements with respect to the development of the leasehold premises or disposition of the production therefrom, and it shall not be necessary for any such contracts, agreements or other instruments to be approved by the commissioner of public lands; but nothing herein contained shall relieve the record title owner of such lease from complying with any of the terms or provisions thereof, and the commissioner shall look solely and only to such record owner for compliance therewith, and in any controversy respecting any such contracts, agreements or other instruments entered into by such lessee with other persons the state of New Mexico or the commissioner of public lands shall not be a necessary party.

**19.2.100.43      EFFECT OF COMMISSIONER'S APPROVAL - MISCELLANEOUS INSTRUMENTS:**

Provided, however, any record owner of any lease may enter into any contract for development of the leasehold premises or any portion thereof, or may create overriding royalties or obligations payable out of production, or enter into any other agreements with respect to the development of the leasehold premises or disposition of the production therefrom, and it shall not be necessary for any such contracts, agreements or other instruments to be approved by the commissioner, but nothing contained in these items shall relieve the record title owner of such lease from complying with any of the terms or provisions thereof, and the commissioner shall look solely and only to such record owner for compliance therewith, and in any controversy respecting any such contracts, agreements or other instruments entered into by the lessee with other persons, neither the state of New Mexico nor the commissioner shall be a necessary party.

Due to the State objection being baseless and lacking jurisdiction is a justified reason to overrule and deny it in its entirety.

CONSLUSION

Therefore, For the reasons stated above, the State agency is limited with boundaries through statutes and rules that lack jurisdiction and must follow that is evidently overruled by the proposed language above, that would evidently fall outside the adjudicatory approval requirements for those reasons, the State's Objection should be overruled and denied in its entirety and Purchaser American insists that its motions be granted as further requests that the Sale Motions be Approved.

Respectfully submitted,

Jonathan Samaniego
P.O. Box 114 Hagerman, NM 88232
(575)499-7330
Energy.jrs@gmail.com
Representative of American Energy Resources LLC

`

CERTIFICATE OF SERVICE I hereby certify that a true and correct copy of the foregoing was filed with the United States Bankruptcy Court Western District of Texas Midland Division and was served on counsel of record via electronic mail on June 15, 2026:

/s/ Charlie Shelton
Charlie Shelton
Texas Bar No: 24079317
Bach W. Norwood
TX Bar No. 24134529
7600 Burnet Road, Suite 530
Austin, TX 78757
(737) 881-7100 (Phone/fax)
cshelton@haywardfirm.com
bnorwood@haywardfirm.com'
Counsel for Ron Satija, Chapter 7 Trustee

/s/ Abigail Rushing Ryan
Abigail Rushing Ryan
State TX Bar No. 24035956
Bankruptcy Counsel
National Association of Attorneys General
1850 M Street NW, 12th Floor
Washington, DC 20036
aryan@naag.org

/s/ Esther C. Jamison
Raúl Torrez
Attorney General
William G. Grantham
Esther C. Jamison
Assistant Attorneys General
Environment Protection Division
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501
ejamison@nmdoj.gov
Attorneys for the State of New Mexico
and the Oil Conservation Division of
the New Mexico Energy, Minerals, and
Natural Resources Department

Justin R. Simmons
United States Attorney
By: /s/Steven B. Bass
Steven B. Bass
Assistant United States Attorney
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
(512) 916-5858/Fax (512) 916-5854
Florida State Bar No. 767300
Email Steven.Bass@usdoj.gov
Counsel for the United States of America

Holland & Hart LLP
/s/ Matthew J. Ochs
Matthew J. Ochs (admitted pro hac vice)
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Telephone: (303) 295-8299
Email: mjochs@hollandhart.com

Holland & Hart LLP
/s/ Robert Sutphin, Jr.
Robert Sutphin, Jr. (pro hac vice pending)
110 North Guadalupe Street, Suite 1
Santa Fe, NM 87501
Telephone: (505) 954-7289
Email: rsutphin@hollandhart.com
Attorneys for Chevron U.S.A. Inc. and
Chevron Midcontinent, L.P.; XTO Holdings,
LLC; ConocoPhillips Company, Concho Oil
& Gas LLC, COG Operating LLC,
Marathon Oil Co., and Marathon Oil
Permian LLC; OXY USA Inc., Anadarko
E&P Onshore LLC, Anadarko Petroleum
Corporation, Kerr-McGee Oil & Gas
Onshore, Limited Partnership, OXY USA
WTP Limited Partnership, Occidental
Permian Limited Partnership, OXY Y-1
Company; Coterra Energy and Magnum
Hunter Production Co.; and Legacy
Reserves Operating LP