UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF TEXAS

MIDLAND DIVISION

**FILED**

**JUN 22 2026**

U.S. BANKRUPTCY COURT
BY_____DEPUTY

In Re:

ACACIA RESOURCES, LLC       §

                            §

                            §       Case No. 24-70194

    Debtor.                 §

                            §       Chapter 7

                            §

**RESPONSE AND AMENDED AND OBJECTION TO AMENDED MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF ORDER APPROVING SETTLEMENT BETWEEN THE CHAPTER 7 TRUSTEE AND THE STATE OF NEW MEXICO AND THE OIL CONSERVATION DIVISION OF THE NEW MEXICO ENERGY, MINERALS AND NATURAL RESOURCES DEPARTMENT**

This is a massive shift from a liquidation/sale posture to a structured dismissal built around litigation recoveries.

The shift creates a notice failure with intent created to deny American adequate time to respond. The trustee filed the 9019 settlement on May 22, 2026, but failed to timely send to the purchaser American until June 10, 2026, which the trustee abetted by the State with motive, did intentionally, to not give purchaser a fair opportunity to defend against the 9019 settlement.

That shift creates three major attack points:

A. The Trustee is abandoning a value-maximizing sale in favor of speculative litigation

Under In re Lionel and Fifth Circuit sale jurisprudence, a trustee must choose the path that maximizes value for creditors.

Here, the Trustee:

1) Rejects a cash sale (American Cash Offer)

2) In favor of uncertain UVTA litigation recoveries

3) Controlled largely by the State

4) With proceeds split up to 70% to the State

That is not a typical exercise of business judgment.

B. The settlement is arguably a disguised sub rosa plan

The settlement:

1) Determines distributions

2) Determines case outcome (dismissal)

3) Determines claim priority (State gets administrative expense waiver in exchange for recovery share)

4) Determines who prosecutes estate claims

This is plan-like relief without a plan.

Courts routinely reject 9019 settlements that reorder priorities or dictate case outcomes.

C. The Trustee is delegating core estate authority

The Trustee gives the State:

1) Authority to prosecute estate claims

2) Authority to control litigation strategy

3) Authority to dismiss estate claims

Delegation of estate-owned causes of action is not favored unless the estate receives clear, quantifiable benefit.

Here, the benefit is speculative.

2. The State's Leverage Is Overstated

The State claims:

1) Midlantic prevents abandonment

2) The estate must plug wells

3) The State will assert administrative claims

4) The Trustee cannot sell assets without resolving environmental liabilities

But:

A. Midlantic is narrow

It prohibits abandonment only when abandonment violates laws designed to protect public health and safety.

It does not require:

1) Full remediation

2) Full plugging

3) Satisfaction of all environmental obligations before sale

B. Administrative claims are not automatic

The State's threatened admin claims are:

1) Unliquidated

2) Contingent

3) Not yet incurred

4) Not entitled to priority until actual expenditures occur

The Trustee is treating them as guaranteed, which is legally incorrect.

C. The assets will be reverted back to the debtor to be abandoned:

1) The State has already admitted to being burdened with the plugging of the numerous wells.

3) The State is misleading saying it's protecting bankruptcy assets in its objection to the sale of bankruptcy assets to American a cash purchaser and prudent operator, and in no way is abandonment of bankruptcy assets considered protecting bankruptcy assets, when the state has already admitted to being burdened to plugging them all.

2) The State is creating more abandonment than is actually necessary, creating more public harm and environmental problems for its constituents, which is a violation of New Mexico law and their own charged obligated duties.

3) The State in its 9019 settlement is creating more unnecessary waste, which is a violation of New Mexico law and their own charged obligated duties.

4) The State is attempting to completely eliminate any chance of protecting correlative rights, which is a violation of New Mexico law and their own charged obligated duties.

**19.15.2.3 STATUTORY AUTHORITY:** 19.15.2 NMAC is adopted pursuant to the Oil and Gas Act, Sections 70-2-1 through 70-2-38 NMSA 1978, which grants the oil conservation division jurisdiction and authority over all matters relating to the conservation of oil and gas, the prevention of waste of oil and gas and of potash because of oil and gas operations, the protection of correlative rights and the disposition of wastes resulting from oil and gas operations.

**19.15.3.3 STATUTORY AUTHORITY:** 19.15.3 NMAC is adopted pursuant to the Oil and Gas Act, Section 70-2-6 NMSA 1978, which grants the oil conservation division and the oil conservation commission jurisdiction and authority over all matters relating to the conservation of oil and gas, the prevention of waste of oil and gas and of potash as a result of oil and gas operations, the protection of correlative rights and the disposition of wastes resulting from oil and gas operations, and Section 70-2-7 NMSA 1978, which provides that the division shall prescribe by rule its hearing procedures. The 2017 amendments are authorized by Section 70-2-12.2 NMSA 1978 (2016), which provides for the appeal of commission rules and Laws 2017, Chapter 137, which provides for uniform rulemaking procedures.

**19.15.4.3 STATUTORY AUTHORITY:** 19.15.4 NMAC is adopted pursuant to the Oil and Gas Act, Section 70-2-6 NMSA 1978, which grants the oil conservation division and the oil conservation commission jurisdiction and authority over all matters relating to the conservation of oil and gas, the prevention of waste of oil and gas and of potash as a result of oil and gas operations, the protection of correlative rights and the disposition of wastes resulting from oil and gas operations, and Section 70-2-7 NMSA 1978, which provides that the division shall prescribe by rule its hearing procedures.

**19.15.5.8 ENFORCEMENT OF STATUTES AND RULES:** The division is charged with the duty and obligation of enforcing the state's rules and statutes relating to the conservation of oil and gas, including the prevention of waste and the protection of correlative rights, and the protection of public health and the environment. An owner or operator shall obtain information pertaining to the regulation of oil and gas before beginning operations.

D. A sale to American could include:

1) Additional bonding, if required by New Mexico law, as American has already agreed to do though not required by New Mexico law but as a prudent operator, by agreeing to update its blanket bond from $75,000 Cash Blanket Bond to $125,000 Cash Blanket Bond. That in fact are Over bonding American operations.

2) Carve-outs, if required by New Mexico law.

3) negotiate OCD-approved transfer conditions, if required by New Mexico law.

The Trustee failed and never tested these alternatives.

E. A sale to American could further benefit the estate and include:

a) American offers cash today

b) The State offers speculative funds later

c) American purchase will protect correlative rights, future development, and five fee wells from being abandoned.

d) The State can continue its litigation on the prior operators knowing American purchase will add $40,000 dollars more cash to the estate on top of the speculative litigation settlement

e) The state can continue its litigation knowing that the estate received $40,000 dollars cash upfront and that if the state is unable to collect the speculative million dollars that it claims from the defendants that the estate was paid something upfront and not due the burden of painful litigation as the state can afford to do.

f) The state can continue its litigations knowing it will not put the estate through expensive long litigation to collect speculative funds, if any, as unaffordable burden on the estate, which the state can afford and appears to be the direction the state is willing to go.

American has standing because:

1) American is a prospective purchaser whose deal is being frivolously withdrawn

2) American is a party directly affected by the frivolous 9019 settlement

3) American is a party in interest under §1109(b) (applied in Chapter 7 via case law)

F. The 9019 settlement fails the Jackson Brewing factors

Specifically:

1) Probability of success: UVTA claims are uncertain, time-barred under §548, and dependent on §544(b) standing.

2) Complexity/delay: Multi-year litigation in New Mexico state court.

3) Best interests of creditors: American's sale provides immediate, quantifiable value; the settlement provides speculative, diluted value.

4) Arms-length: The State is leveraging regulatory power to extract litigation proceeds.

## 2. The settlement is a sub rosa plan

It:

1) Predetermines distributions
2) Predetermines dismissal
3) Predetermines claim treatment
4) Predetermines litigation control

All without creditor voting.

## 3. The Trustee breached fiduciary duty by abandoning a higher-value alternative

American argues that:

1) Negotiations were never conducted
2) Never compared sale value vs. litigation value

## 4. The Trustee's delegation of estate claims is improper

Estate claims must be prosecuted:

1) By the Trustee
2) For the benefit of creditors
3) Under court supervision

Delegating them to the State, who is also a creditor, creates a conflict of interest.

The structured dismissal violates Jevic.

The Supreme Court prohibits structured dismissals that:

1) Deviate from priority rules
2) Without consent of affected creditors

In the states structured 9019 settlement here:

1) The State gets priority treatment
2) Other creditors get whatever is left
3) No creditor vote
4) No plan protections

A. American objection to the 9019 settlement

Grounds:

1) Sub rosa plan
2) Failure of Jackson Brewing factors
3) Improper delegation
4) Violation of Jevic
5) Failure to maximize value
6) Lack of evidentiary support
7) Overstatement of environmental liabilities

B. American Demands an evidentiary hearing

Force the Trustee to:

1) Explain in great detail and great depth as to why he withdrew the sale to American
2) Provide valuation of UVTA claims
3) Provide comparison of sale vs. litigation recoveries

C. Re-assert American offer as a superior alternative

American presents:

1) Its enforceable rights under the agreed agreement between the trustee accepting the $40,000 dollars cash offer of American.
2) Proof of financial assurance

D. Consider a competing 9019 proposal

American offers:

1) Creditors get more cash
2) Creditors get immediate cash

This is often more attractive to courts than speculative litigation.

Furthermore,

1. American acquired enforceable rights under §363 once the Trustee accepted the bid and filed the sale motion.

Courts repeatedly hold that:

a) A successful bidder gains vested rights once the trustee accepts the bid and seeks approval.

b) A trustee cannot withdraw a sale motion to American in bad faith or to favor another party the State who is also a creditor.

c) A trustee cannot collude with a governmental entity to circumvent §363.

2. The State's settlement is an impermissible end-run around §363
American argues:

a) The State is using the 9019 process to block a lawful sale.

b) The settlement is a sub rosa plan that reallocates estate value.

c) The Trustee's withdrawal of the sale motion is not in the best interest of the estate.

3. The Trustee's fiduciary duties run to the estate, not the State.
American asserts:

a) The Trustee cannot subordinate estate value to regulatory interests.

b) The Trustee cannot delegate estate claims to the State.

c) The Trustee cannot allow the State to dictate the disposition of estate assets.

4. The State's environmental claims are dischargeable and cannot be used to block a sale.
Under Midlantic, Kovacs, and Torwico, American argues:

a) Environmental obligations are claims, not veto power.

b) The State cannot use regulatory leverage to seize assets outside §363.

5. The settlement violates the Supremacy Clause
American asserts:

a) Federal bankruptcy law preempts state attempts to control asset disposition.

b) The State cannot force the Trustee to abandon a sale approved under federal law.

6. Further Arguments:
   American asserts:
   a) Trustee's withdrawal is improper
   b) Settlement is a sub rosa plan
   c) State interference violates Supremacy Clause
   d) Trustee breached fiduciary duties
   e) American is entitled to specific performance or reinstatement of sale

## CONSLUSION

For all the reasons set forth above, the Amended Rule 9019 Settlement between the Trustee and the State of New Mexico/OCD cannot be approved. The proposed settlement is not a compromise, it is a **de facto structured dismissal**, a **sub rosa plan**, and an **improper delegation of core estate authority** to a governmental creditor whose interests are not aligned with the estate. It abandons a value-maximizing §363 sale in favor of speculative, State-controlled litigation recoveries that fail every Jackson Brewing factor and violate the Supreme Court's directives in *Jevic*.

The Trustee's withdrawal of the sale motion, without analysis, valuation, negotiation, or comparison of alternatives, constitutes a breach of fiduciary duty and an abdication of the obligation to maximize estate value. The State's asserted environmental leverage is overstated, legally unsupported, and cannot be used to commandeer the disposition of federal bankruptcy estate assets. Federal law, not state regulatory preference, governs the administration and liquidation of this estate, and the Supremacy Clause prohibits the State from dictating outcomes that conflict with the Bankruptcy Code.

American Energy Resources stands ready, willing, and able to close on its revised, fully funded purchase that provides **immediate, quantifiable value** to creditors, value that far exceeds the speculative recoveries contemplated by the settlement. At minimum, the Court cannot approve the settlement without a full evidentiary hearing requiring the Trustee to justify the abandonment of the agreed sale, quantify the alleged UVTA claims,

and demonstrate, based on evidence, not conjecture, that the settlement is fair, equitable, and in the best interests of creditors.

Because the Trustee has not met this burden, and because the settlement violates the Bankruptcy Code, Supreme Court precedent, and the Trustee's fiduciary obligations, **American Energy Resources respectfully requests that the Court:**

1) **Deny approval of the Amended Rule 9019 Settlement;**

2) **Compel the Trustee to proceed with the agreed §363 sale to American or reinstate the sale process;**

3) **Alternatively, permit American to submit a competing 9019 proposal offering superior creditor recovery; and**

4) **Grant such other and further relief as the Court deems just and proper.**

Respectfully submitted,

Jonathan Samaniego
P.O. Box 114 Hagerman, NM 88232
(575)499-7330
Energy.jrs@gmail.com
Representative of American Energy Resources LLC

CERTIFICATE OF SERVICE I hereby certify that a true and correct copy of the foregoing was filed with the United States Bankruptcy Court Western District of Texas Midland Division and was served on counsel of record via electronic mail on June 15, 2026:

/s/ Charlie Shelton
Charlie Shelton
Texas Bar No: 24079317
Bach W. Norwood
TX Bar No. 24134529
7600 Burnet Road, Suite 530
Austin, TX 78757
(737) 881-7100 (Phone/fax)
cshelton@haywardfirm.com
bnorwood@haywardfirm.com'
Counsel for Ron Satija, Chapter 7 Trustee

/s/ Abigail Rushing Ryan
Abigail Rushing Ryan
State TX Bar No. 24035956
Bankruptcy Counsel
National Association of Attorneys General
1850 M Street NW, 12th Floor
Washington, DC 20036
aryan@naag.org

/s/ Esther C. Jamison
Raúl Torrez
Attorney General
William G. Grantham
Esther C. Jamison
Assistant Attorneys General
Environment Protection Division
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501
ejamison@nmdoj.gov
Attorneys for the State of New Mexico
and the Oil Conservation Division of
the New Mexico Energy, Minerals, and
Natural Resources Department

Justin R. Simmons
United States Attorney
By: /s/Steven B. Bass
Steven B. Bass
Assistant United States Attorney
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
(512) 916-5858/Fax (512) 916-5854
Florida State Bar No. 767300
Email Steven.Bass@usdoj.gov
Counsel for the United States of America

Holland & Hart LLP
/s/ Matthew J. Ochs
Matthew J. Ochs (admitted pro hac vice)
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Telephone: (303) 295-8299
Email: mjochs@hollandhart.com

Holland & Hart LLP
/s/ Robert Sutphin, Jr.
Robert Sutphin, Jr. (pro hac vice pending)
110 North Guadalupe Street, Suite 1
Santa Fe, NM 87501
Telephone: (505) 954-7289
Email: rsutphin@hollandhart.com
Attorneys for Chevron U.S.A. Inc. and
Chevron Midcontinent, L.P.; XTO Holdings,
LLC; ConocoPhillips Company, Concho Oil
& Gas LLC, COG Operating LLC,
Marathon Oil Co., and Marathon Oil
Permian LLC; OXY USA Inc., Anadarko
E&P Onshore LLC, Anadarko Petroleum
Corporation, Kerr-McGee Oil & Gas
Onshore, Limited Partnership, OXY USA
WTP Limited Partnership, Occidental
Permian Limited Partnership, OXY Y-1
Company; Coterra Energy and Magnum
Hunter Production Co.; and Legacy
Reserves Operating LP